492 S.E.2d 167

Joseph Larry WALKER, Petitioner Below, Appellee

v.

WEST VIRGINIA ETHICS COM-MISSION, Respondent Be-low, Appellant.

Joseph Larry WALKER, Petitioner Below, Appellant

v.

WEST VIRGINIA ETHICS COM-MISSION, Respondent Be-low, Appellee.

Nos. 23881, 23890.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided July 15, 1997.

John D. Wooton, Wooton Law Firm, Beckley, for Appellant, Joseph Larry Walker.

Robert J. Lamont, West Virginia Ethics Commission, Charleston, for Appellant, West Virginia Ethics Commission.

DAVIS, Justice:

In this administrative appeal, the West Virginia Ethics Commission,[1] appeals a memorandum opinion, issued May 17, 1996, and a final order, entered June 14, 1996, by the Circuit Court of Raleigh County, which ordered, in part, the dismissal, for procedural reasons, of Count 5 of the Commission's statement of charges against Joseph Larry Walker. Count 5 concerned Walker's knowing approval of a subordinate's falsified travel expense form. Additionally, Walker appeals from that part of the circuit court's final order affirming the Commission's prior finding that Walker had committed the ethics violations alleged in Count 3 of the Commission's statement of charges, which charged Walker with the falsification of a travel expense form. As both appeals relate to the same administrative proceedings and involve the same parties, we have consolidated these two appeals for purposes of rendering a decision therein. Upon a review of the record and the parties' arguments, and for the reasons stated below, we affirm in part and reverse in part the decision of the Circuit Court of Raleigh County and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 1992, Joseph Larry Walker [hereinafter "Walker"], was employed as a District Supervisor with the West Virginia Division of Re-

---

1. During the administrative proceedings before the West Virginia Ethics Commission, the Ethics Commission was the complainant, and Joseph Larry Walker was the respondent. Following the administrative hearings, Walker's appeal to the Circuit Court of Raleigh County caused the parties to be titled procedurally as the petitioner (Walker) and the respondent (the Commission). Before this Court, each party has filed an appeal, rendering each party the appellant in its respective appeal; because each party also has filed a response to the opposing party's appellate brief, each party also is nominated the appellee with regard to its respective challenges. Accordingly, for ease of reference, the parties hereinafter will be referred to as "Walker" and "the Commission."

habilitation Services [hereinafter "DRS"][2] and was headquartered in the Beckley district office. As a result of this employment, Walker was classified as a public employee[3] whose conduct was governed by the West Virginia Governmental Ethics Act, W. Va. Code § 6B–1–1, *et seq.* [hereinafter "the Ethics Act"].[4] The state agency charged with the enforcement of the Ethics Act is the West Virginia Ethics Commission [hereinafter "the Commission"].[5]

Pursuant to the Ethics Act, alleged ethics violations are brought to the Commission's attention by way of verified complaint.[6] Upon receiving a verified complaint, the Commission assigns an investigative panel to review the allegations.[7] If the Panel finds probable cause exists to believe the named employee committed the alleged ethics violations, the Commission issues a statement of charges and a notice of hearing informing the employee of the specific instances of alleged unethical behavior and scheduling a hearing for the taking of evidence therein.[8] Following a hearing before a hearing examiner or hearing board, the entire record and a recommended decision are tendered to the Commission which then enters a final decision.[9]

The events forming the basis of the instant appeal occurred in late fall, 1992, and mid-spring, 1993. Three employees who worked with Walker in the Beckley DRS district office filed a verified complaint with the Ethics Commission on March 31, 1993. Verified complaint No. 93–06 alleged:

This complaint charges Joseph Larry Walker and Thomas E. Hurley,[10] employees of the Division of Rehabilitation Services, Beckley District Office, with using their positions for personal gain.

Mr. Hurley, while on salary, routinely files false itineraries and charges the Agency mileage for trips he does not make. Mr. Walker approves Mr. Hurley's itineraries and expense accounts and certainly is aware of Mr. Hurley's indiscretions. Mr. Walker also is guilty of falsifying his itineraries and expense accounts.

This is a critical time for our Agency. We have exhausted our funds for case services to disabled individuals, yet these men continue to falsify expense accounts for non-existent travel and work not performed.

By letter dated April 6, 1993, the Commission notified Walker of the pending complaint and the designation of an investigative panel to assess these allegations. Following assignment of Investigative Panel "D" to review the charges and a finding by this Panel of probable cause to believe that Walker violated W. Va.Code § 6B–2–5(b)(1) (1992) (Repl.Vol.1993),[11] the Commission issued a statement of charges dated October 12, 1993. This statement

---

2. During oral argument before this Court, counsel for Mr. Walker indicated that Walker is no longer employed in his prior position. Walker's present employment is not relevant to the matters before this Court.

3. *See* W. Va.Code § 6B–1–3(h) (1989) (Repl.Vol. 1993) (defining "public employee").

4. *See generally* W. Va.Code § 6B–1–2 (1989) (Repl.Vol.1993) (reciting purpose of West Virginia Governmental Ethics Act).

5. *See* W. Va.Code § 6B–2–1 (1994) (Supp.1996) (creating West Virginia Ethics Commission); W. Va.Code § 6B–2–2 (1989) (Repl.Vol.1993) (describing Commission's "general powers and duties").

6. W. Va.Code § 6B–2–4(a) (1990) (Repl.Vol. 1993) (providing for the "filing by any person with the commission of a complaint which is duly verified by oath or affirmation").

7. *Id.*

8. W. Va.Code § 6B–2–4(f) (1990) (Repl.Vol. 1993).

9. W. Va.Code §§ 6B–2–4(j), (*l*) (1990) (Repl.Vol. 1993).

10. Thomas Hurley, a subordinate of Walker, was employed as the branch office manager for the Beckley DRS district office.

11. W. Va.Code § 6B–2–5(b)(1) (1992) (Repl.Vol. 1993) states, in pertinent part: "(b) *Use of public office for private gain.* ——(1) A public official or public employee may not knowingly and intentionally use his or her office or the prestige of his or her office for his or her own private gain or that of another person."

charge[d] that Joseph L. Walker, a Supervisor in the Beckley branch office of the Division of Rehabilitation Services, did unlawfully, knowingly and intentionally use his office for private gain as hereinafter set forth.

### Count 1

On November 24, 1992, from approximately 1:24 p.m. until the end of his workday, Joseph L. Walker engaged in personal business unrelated to his duties for the Division of Rehabilitation Services. He did not take annual leave or leave without compensation for this time.

### Count 2

On November 25, 1992, from approximately 2:23 p.m. until the end of his workday, Joseph L. Walker engaged in personal business unrelated to his duties for the Division of Rehabilitation Services. He did not take annual leave or leave without compensation for this time.

### Count 3

On or about December 1, 1992[sic] Joseph L. Walker submitted a Travel Expense Account Settlement form which claimed expenses for a trip allegedly taken from Beckley to Hinton on November 25, 1992. Mr. Walker subsequently accepted reimbursement for the mileage claimed on that day even though he did not make such a trip.

### Count 4

On or about April 6, 1993[sic] Joseph L. Walker took a trip from Beckley, WV to Princeton, WV that was related to his state employment. Rather than return to his office in Beckley, however, he exited from the West Virginia Turnpike at the Ghent exit ramp at approximately 12:15 p.m. He did not return to the Beckley office until approximately 4:00 p.m. that day and did not take annual leave or leave without compensation for the time between 12:15 p.m. and his return to the office.

On February 10, 1994, Thomas Hurley, who, along with Walker, was charged in the verified complaint with violating certain ethics provisions, entered a conciliation agreement with the Commission. As a result of Hurley's agreement, the Commission received supplemental information suggesting grounds for charging Walker with an additional count of unethical behavior.[12] Counsel

12. Specifically, the conciliation agreement contained the following findings of fact implicating Walker:

4. On or about October 20, 1992, Mr. Hurley submitted an Itinerary for travel, Form WVDRS–01, which indicated that on October 29, 1992, he would spend the entire workday on a trip to the Welch Branch office.

5. *Mr. Hurley's Itinerary was approved on October 26, 1992, by his Supervisor, Joseph L. Walker, even though Mr. Walker knew that Mr. Hurley did not intend to take the trip to Welch on October 29, 1992.*

. . . .

8. Subsequent to submitting his October, 1992, Travel Expense Account Settlement, *Mr. Hurley received and cashed a check drawn on an account containing public monies for the full amount requested, including the expenses for the October 29[sic] trip to Welch he did not take, with the knowledge and approval of his Supervisor, Joseph L. Walker.*

. . . .

10. The reason the trip to Welch was not taken on October 29, 1992, and Mr. Hurley claimed a reimbursement therefor was to help defray the costs of an Open House held at the Beckley office of the Division of Rehabilitation Services on October 15, 1992. The Open House at the Beckley office of the Division of Rehabilitation Services was to exhibit the newly remodeled offices as an example of compliance with the aid to Americans with Disabilities Act. Guests were by invitation and included doctors and other professionals, along with public officials. The cost of the reception was Five Hundred Sixty and 00/100 Dollars ($560.00) [sic] and there were not sufficient funds budgeted from the State of West Virginia to defray all the costs. The State of West Virginia paid Five Hundred and 00/100 Dollars ($500.00) toward the expenses. *The additional Sixty and 00/100 Dollars ($60.00) of excess expenses for the cost of the reception were defrayed by Mr. Hurley and his Supervisor, Joseph L. Walker, from their personal finances.* The reimbursement [of $28.60] from the trip to Welch on October 29, 1992, which was not taken [sic] was to pay back Mr. Hurley for personal funds he expended for the benefit of the Beckley office of the Division of Rehabilitation Services[.]

(Emphasis added). The record suggests that Walker approached Hurley and solicited him to contribute thirty dollars to the above-described budget shortage. Apparently, Walker further hinted to Hurley that he, Hurley, could recoup

for the Commission moved for a continuance to permit Investigative Panel "D" to examine this information and determine the propriety of additional charges, but the hearing examiner denied the motion. As a result, a hearing was held on February 17, 1994, as previously scheduled, with respect to the four counts with which Walker was initially charged. After receiving testimony and other evidence, the hearing examiner granted Walker's motion for a directed verdict, pursuant to Rule 50 of the West Virginia Rules of Civil Procedure, and dismissed the four counts of the statement of charges. The hearing examiner tendered a recommended decision to the Commission, dated August 22, 1994, recommending dismissal of the statement of charges because "[t]he West Virginia Ethics Commission failed to prove beyond a reasonable doubt that Respondent, Joseph L. Walker, violated West Virginia Code § 6B–2–5[ (b)(1) ] and the allegations contained in the Statement of Charges."

The Commission, by order entered October 7, 1994, affirmed the hearing examiner's recommendation to dismiss Counts 1, 2, and 4 and dismissed the same. However, the Commission rejected the hearing examiner's recommended dismissal of Count 3 and, upon a review of the hearing testimony, concluded that Walker received reimbursement for a trip to Hinton, West Virginia, on November 25, 1992, which he did not make. In conclusion, the Commission found "the proposed decision of the Hearing Examiner to dismiss Count 3 is in error and should be remanded for further hearing."

Meanwhile, Investigative Panel "D" pursued its inquiry of the additional information garnered from Hurley's conciliation agreement and again found probable cause sufficient to believe that Walker violated W. Va. Code § 6B–2–5(b)(1).[13] Consequently, the Commission issued a second statement of charges. This statement, dated April 12, 1994,

> charge[d] that Joseph L. Walker, an employee of the West Virginia Division of Rehabilitation Services, did unlawfully,

knowingly and intentionally use his office for the private gain of another as hereinafter set forth.

### Count 5

On or about October 1992, Joseph L. Walker approved an Itinerary form for a subordinate, Thomas Hurley. That Itinerary form indicated that Mr. Hurley planned to take an official business trip on October 29, 1992[sic] from Beckley to Welch, WV. Mr. Walker approved the form knowing that Mr. Hurley did not plan to take that October 29[sic] trip. On or about the end of October 1992[sic] Mr. Walker approved a Travel Expense Account Settlement form submitted by Mr. Hurley which sought reimbursement for expenses incurred in [sic] aforementioned trip from Beckley to Welch on October 29, 1992. Mr. Walker approved that Travel Expense Settlement form knowing Mr. Hurley did not take that trip. As a result of Mr. Walker's actions, Mr. Hurley received reimbursement for official travel he did not take.

By prior order of the Commission, entered October 7, 1994, the hearing on Count 5 was consolidated with the remand hearing on Count 3. Following the taking of evidence during the November 4, 1994, hearing, the hearing examiner submitted a recommended decision to the Commission dated March 24, 1995. In this decision, the hearing examiner opined, with respect to Count 3, that "it would be difficult for the Respondent [Walker] to be in Hinton, West Virginia, on the date and time indicated in the submitted travel documents." Finding "no evidence in this record to dispute that the Respondent [Walker] did not go to Hinton, West Virginia, on November 25, 1992, as reflected on his Itinerary and Travel Expense Account Settlement," the hearing examiner concluded that "[i]t is clear, from the evidence presented, that on November 25, 1992, the Respondent [Walker] was in Beckley, West Virginia." Accordingly, the hearing examiner

---

his personal contribution by submitting the fraudulent travel reimbursement forms for his non-existent trip to Welch.

13. For the applicable text of W. Va.Code § 6B–2–5(b)(1), see *supra* note 11.

found that "the record contains sufficient evidence beyond a reasonable doubt to support a material violation of West Virginia Code § 6B–2–5(b)[ (1) ] as contained in Count 3 of the Statement of Charges."

Likewise, with respect to Count 5, the hearing examiner noted:

> Although the amount of money involved in this transaction was small, nevertheless, the conduct of the Respondent [Walker] was the type the West Virginia Ethics Act was enacted to prevent. The evidence submitted clearly shows that the Respondent [Walker] used his office as District Supervisor for the private gain of another, namely, Thomas Hurley.

Thus, the hearing examiner recommended that "[t]he record contains sufficient evidence beyond a reasonable doubt to support a material violation of West Virginia Code § 6B–2–5(b)[ (1) ]" with regard to Count 5 of the statement of charges. By final decision entered May 4, 1995, the Commission affirmed the hearing examiner's recommendations finding that Walker had violated the Ethics Act as charged in Counts 3 and 5.[14]

On June 5, 1995, Walker filed a petition for appeal in the Circuit Court of Raleigh County. The circuit court issued a memorandum opinion on May 17, 1996. With respect to Count 3, the court affirmed the Commission's decision finding that Walker had violated the Ethics Act. The circuit court determined that the Commission properly decided that the evidence submitted as to Count 3 was sufficient to overcome Walker's Rule 50 motion

for a directed verdict. In the same manner, the court concluded that the investigative panel properly complied with the forty-five-day time limit contained in W. Va.Code § 6B–2–4(d) (1990) (Repl.Vol.1993).[15] The court construed this provision as requiring the Panel to "proceed to consider," or commence a review of, the complaint allegations, any response, and additional evidence within forty-five days of mailing to the respondent the notice of investigation, but not mandating that the investigation be completed within this time frame.

By contrast, the circuit court rejected the Commission's finding as to Count 5 and dismissed this Count for procedural reasons. First, the court noted W. Va.Code § 6B–2–4(v) (1990) (Repl.Vol.1993), which recites "[t]he provisions of this section shall apply to violations of this chapter occurring ... within one year before the filing of a complaint under subsection (a) of this section[.]" In this regard, the court recognized that the events alleged in Count 5 occurred in October, 1992, and were recited in a verified complaint filed March 31, 1993; yet the investigative panel did not meet to consider adding Count 5 until March 3, 1994, and the statement of charges containing Count 5 was not filed until April 12, 1994.[16] Thus, the court ruled:

> The record is clear that the investigative panel was not appointed as to Count [5] nor was the complaint filed as to Count [5] within one year of the violation. Respon-

---

14. For the violations contained in Count 3, the Commission sanctioned Walker by publicly reprimanding him "for accepting reimbursement for mileage claimed for a trip ... even though he did not make such a trip"; ordering him "to cease and desist from accepting reimbursement for trips which he does not take"; requiring him "to pay to the State of West Virginia[ ] restitution in the amount of $13.00"; and imposing "a fine in the amount of $1,000." With respect to the violations of Count 5, the Commission sanctioned Walker by way of public reprimand ("for approving a Travel Expense Settlement form relating to a trip which he knew was not taken"); an order to cease and desist ("from approving Travel Expense Settlement Forms for trips which are not taken"); and a $500 fine.

15. W. Va.Code § 6B–2–4(d) (1990) (Repl.Vol. 1993) mandates:

> Within the forty-five day period following the mailing of a notice of investigation, the investigative panel shall proceed to consider (1) the allegations raised in the complaint, (2) any timely received written response of the respondent, and (3) any other competent evidence gathered by or submitted to the commission which has a proper bearing on the issue of probable cause[.]

16. It should be noted that the circuit court erroneously stated that "[t]he Complaint that contained Counts [1] through [4] was filed in March 1993." A review of the verified complaint in this matter demonstrates that the complaint, itself, was not divided into counts. Rather, Counts 1 through 4 did not exist until Walker was charged with these violations in the statement of charges dated October 12, 1993.

dent [the Commission] argues that the filing of the complaint on March 31, 1993, is timely as to Count [5] because it was later amended to include Count [5]. That argument would be persuasive if the original complaint put Walker on notice that he would have to defend the allegations stated in Count [5], but it did not. The first formal statement of charges as to Count [5] was filed on April 12, 1994, following the convening of a panel for that purpose on March 3, 1994.

Thus, the court determined that the Commission's decision as to Count 5 should be reversed because Count 5 was not timely filed pursuant to W. Va.Code § 6B-2-4(v). By order entered June 14, 1996, the circuit court incorporated its earlier memorandum opinion affirming the Commission's decision as to Count 3 and reversing the Commission's decision as to Count 5. It is from these rulings of the circuit court that both parties appeal to this Court.

## II.

## DISCUSSION

Before this Court, the Commission appeals the circuit court's ruling dismissing, on procedural grounds, Count 5 of the statement of charges, which concerned Walker's knowing approval of a subordinate's falsified travel expense form. The Commission assigns as error the circuit court's interpretation of the applicable statute of limitations contained in W. Va.Code § 6B-2-4(v). Walker appeals that portion of the circuit court's decision that affirms the Commission's prior finding that Walker had committed the ethics violations alleged in Count 3 of the statement of charges, which charged Walker with the falsification of a travel expense form. Walker raises the following assignments of error: (1) the Commission improperly relied upon evidence obtained illegally by an unlicensed private investigator; (2) the Commission improvidently determined the procedural course of Count 3; (3) the Commission failed

to abide by the statutory time periods prescribed by W. Va.Code § 6B-2-4(d) and W. Va.Code § 6B-2-4(l); and (4) the circuit court utilized the wrong standard of review in affirming the Commission's prior order as to Count 3.[17] Following a brief discussion of the appropriate standard of appellate review, we will address the parties' contentions.

### A. Standard of Review

In West Virginia, various administrative agencies and commissions have been established to oversee particularized areas of governmental functioning. Included within the statutory authority of these agencies is the power to hear and decide matters within an agency's specific field of expertise and to render final decisions in these disputes. See W. Va.Code §§ 29A-5-1 to -3 (1964) (Repl. Vol.1993). See also Syl. pt. 1, *Appalachian Power Co. v. Public Serv. Comm'n*, 170 W.Va. 757, 296 S.E.2d 887 (1982) ("The Legislature may create an administrative agency and give it quasi-judicial powers to conduct hearings and make findings of fact without violating the separation of powers doctrine.").

■■■ Once an agency has issued an order, the aggrieved party is permitted to request judicial review of the adverse decision. W. Va.Code § 29A-5-4(a) (1964) (Repl.Vol. 1993). Upon appeal to the appropriate circuit court,

[t]he court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

---

17. We have reviewed the remaining assignments of error asserted by the parties and decline to address them as being without merit. In this regard, we further dismiss any error alleged with respect to the Commission's statement of charges containing Counts 1, 2, and 4 because such error, if it in fact exists, has been rendered harmless by the Commission's dismissal of these charges pursuant to Walker's motion for a directed verdict thereon.

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 29A–5–4(g) (1964) (Repl.Vol. 1993). Clarifying the extent of a circuit court's review of an agency decision, we previously have explained that:

> [A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. *Anderson v. City of Bessemer City*, [*N.C.*] 470 U.S. 564, 57[3]–7[4], 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518, 528–[29] (1985).

*Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986). In this manner,

> "the task of the circuit court is to determine 'whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Frymier–Halloran v. Paige*, 193 W.Va. 687, 695, 458 S.E.2d 780, 788 (1995) *quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136, 153 (1971)[ (citations omitted) ]. However, these deferential standards have no application if an agency's decision is based upon a mistaken impression of the legal principles involved. Under such circumstances, the findings and conclusions of an agency will be accorded diminished respect on appeal.

*West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. 326, 335, 472 S.E.2d 411, 420 (1996).

▮▮▮ Following the entry of a final order by the circuit court, further appeal may be had to this Court:

> Any party adversely affected by the final judgment of the circuit court under this chapter [State Administrative Procedures Act] may seek review thereof by appeal to the supreme court of appeals of this state, and jurisdiction is hereby conferred upon such court to hear and entertain such appeals upon application made therefor in the manner and within the time provided by law for civil appeals generally.

W. Va.Code § 29A–6–1 (1964) (Repl.Vol. 1993). In this regard, we have defined the scope of appellate review of a circuit court order as follows:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) (citation omitted). Accordingly,

> "[i]n reviewing the judgment of the lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law." Syllabus Point 1, *Burks v. McNeel*, 164 W.Va. 654, 264 S.E.2d 651 (1980).

Syllabus, *Bolton v. Bechtold*, 178 W.Va. 556, 363 S.E.2d 241 (1987) (per curiam). We now apply these principles to our evaluation of the parties' contentions.

B. *Issue raised by the Commission respecting Count 5 (knowing approval of subordinate's falsified travel expense form): The circuit court incorrectly interpreted the applicable statute of limitations contained in W. Va.Code § 6B–2–4(v).*

The Commission argues that the circuit court erroneously interpreted the applicable statute of limitations. W. Va.Code § 6B–2–4(v) (1990) (Repl.Vol.1993) states "[t]he provisions of this section shall apply to violations of this chapter occurring … *within one year before the filing of a complaint under subsection (a) of this section* [.]" (Emphasis added). Thus, the Commission suggests that, strictly construing the applicable statute of

limitations, the circuit court's opinion that the statute of limitations had expired prior to the issuance of the second statement of charges was erroneous.

The Commission notes further that its actions complied with this statutory time frame. In the proceedings below, the verified complaint was filed on March 31, 1993, and contained information, alleging perceived transgressions involving both Walker and Hurley, which later formed the basis of Count 5. Consequently, Walker had timely notice of the Count 5 allegations involving Hurley because they were contained in the verified complaint, itself.

Walker responds that the circuit court properly found that the Commission failed to file Count 5 within the one-year statute of limitations. The court noted that "[t]he statement of charges as to Count [5] was filed on April 12, 1994," which pertained to "misconduct that occurred in the month of October, 1992." Given that the alleged violations occurred in October, 1992; that the statute of limitations requires a complaint to be filed within one year of the alleged violations; and that the statement of charges containing Count 5 was not issued until April, 1994, more than one year after the alleged violations occurred, Walker contends that the circuit court correctly determined that the Commission had not filed this charge within the applicable statute of limitations.[18]

With this assignment of error, we are requested to interpret the statute of limitations within which a verified complaint must be filed with respect to particular allegations of ethics violations. As set forth above, a plain reading of W. Va.Code § 6B–2–4(v) (1990) (Repl.Vol.1993) requires a verified complaint to be filed "within one year" of the commission of the alleged ethics violation(s) to which it relates. *See, e.g.,* Syl. pt. 3, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Protection,* 191 W.Va. 134, 443 S.E.2d 602 (1994) ("Where the language of a statute is

clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." (Citations omitted).). We recently have reiterated that statutes of limitations should be strictly construed to preserve their intended effect: to timely provide notice that litigation has been commenced against the named individual. *See Perdue v. Hess,* 199 W.Va. 299, 303, 484 S.E.2d 182, 186 (1997) (noting that "[d]efendants have a right to rely on the certainty the statute [of limitations] provides" (citations omitted)).

In the proceedings below, Walker's co-workers filed the verified complaint on March 31, 1993, generally describing perceived transgressions by both Walker and Hurley. Following a general statement charging Walker with "using [his] position[ ] for personal gain," the relevant portion of the verified complaint alleges: "Mr. Hurley, while on salary, routinely files false itineraries and charges the Agency mileage for trips he does not make. Mr. Walker approves Mr. Hurley's itineraries and expense accounts and certainly is aware of Mr. Hurley's indiscretions. Mr. Walker also is guilty of falsifying his itineraries and expense accounts." The parties do not contest that this complaint sufficiently apprised Walker of the charges contained in Counts 1–4, which suggest that he failed to report for work on certain enumerated days and did not account for these absences via annual leave or leave without compensation. Nonetheless, Walker contests, and the circuit court so found, that the above-quoted statement did not place him on notice as to the charges in Count 5, alleging his knowing approval of Hurley's falsified travel expense form. Surprisingly, the dispute regarding appropriate notice and compliance with the applicable statute of limitations centers around that Count which the verified complaint more clearly alleges and establishes. The primary purpose of a statute of limitations being notice to the charged

---

18. In further support of his position, Walker attempts to analogize the Commission's subsequent issuance of the statement of charges containing Count 5 either to W. Va. R. Civ. P. 15, relating to the amendment of pleadings, citing *Dzinglski v. Weirton Steel Corp.,* 191 W.Va. 278, 287, 445 S.E.2d 219, 228 (1994), or to the

amendment of an indictment, given the allegedly quasi-criminal nature of ethics proceedings, citing *United States v. Castellano,* 610 F.Supp. 1359, 1380 (S.D.N.Y.1985). Because we are able to resolve this issue based solely upon an interpretation of the relevant statutory language, we decline to discuss these arguments.

party of impending litigation, we find that Walker certainly had notice of the charges in Count 5 upon receipt of the verified complaint.

More particularly, a strict reading of the applicable statute of limitations also suggests that the Commission complied with the applicable statutory time period. As previously noted, the verified complaint in this case, which contained general allegations of unethical behavior by both Walker and Hurley, was filed on March 31, 1993. Count 5 alleged that Walker had engaged in unethical behavior in October, 1992. Pursuant to the applicable statute of limitations, conduct described in the verified complaint had to occur within the one-year period preceding the date the complaint was filed. Accordingly, conduct occurring as early as March, 1992, could have been referred to in this complaint. Thus, the October, 1992, conduct alleged in Count 5, which occurred within the twelve months immediately preceding the complaint's filing date, was well within the statute of limitations for the March 31, 1993, verified complaint. Consequently, we find that the circuit court erroneously determined that the Commission had not complied with the applicable statute of limitations in dismissing, for procedural reasons, Count 5 of the statement of charges. Therefore, we reverse that portion of the circuit court's order procedurally barring Count 5 and remand that count to the Circuit Court of Raleigh County for a decision on the merits of Walker's appeal from the Commission's ruling thereon.

C. *Issues raised by Walker with respect to Count 3 (falsification of travel expense form)*

1. *The Commission improperly relied upon evidence obtained illegally by an unlicensed private investigator.*

Walker first argues that the Commission's reliance upon the testimony of Morgan, an unlicensed private investigator employed by Walker's co-workers, mandates dismissal of Count 3. W. Va.Code § 30–18–8(a) (1994) (Supp.1996) specifically states that "[n]o person shall engage in the private investigation business ... without having first obtained from the secretary of state a license to conduct such business." In the same manner, employment as a private investigator, while being unlicensed so to act, is a misdemeanor punishable by a fine of up to $5,000 and a jail sentence of up to one year. W. Va.Code § 30–18–11(a) (1994) (Supp.1996). Thus, Walker urges that "the use of illegally obtained evidence to further the goal of ethics in government is a moral oxymoron of the highest order. It is simply unseemly to use such evidence in pursuit of fostering ethical values." Accordingly, he requests this Court to dismiss all charges against him in order to manifest disapproval with the Commission's tactics.

The Commission responds that the fact that Walker's co-workers illegally obtained evidence by hiring Morgan does not support a reversal of this case. *See State v. Oldaker,* 172 W.Va. 258, 304 S.E.2d 843 (1983) (holding evidence unlawfully seized by a citizen, acting in a purely private capacity, is not subject to the exclusionary rule); *Sutherland v. Kroger Co.,* 144 W.Va. 673, 110 S.E.2d 716 (1959) (ruling that constitutional protections against unreasonable searches and seizures apply only to state and federal governments and not to private individuals). Because co-workers, and not the Ethics Commission, itself, hired Morgan to follow Walker, the Commission contends that the hearing examiner's decision to permit Morgan's testimony was not in error as the evidence was obtained by private, rather than state, actors.

We note initially that, at the time of the events forming the basis of the instant appeal, W. Va.Code § 30–18–1 (1960) (Repl.Vol. 1993) [19] prohibited engagement in private investigations without a license:

**19.** Walker asserts that W. Va.Code § 30–18–8(a) (1994) (Supp.1996) renders unlicensed private investigation a criminal offense and that W. Va. Code § 30–18–11(a) (1994) (Supp.1996) supplies the penalties for this misdemeanor. A review of the applicable statutory provisions, though, indicates that these statutes were not in effect at the time of the underlying proceedings. Accordingly, the statutes previously in effect, which created this crime and established the accompanying penalties, govern our resolution of this issue. *See* W. Va.Code § 30–18–1 (1960) (Repl.Vol. 1993) (defining crime of unlicensed private investigation); W. Va.Code § 30–18–8 (1959)

No person ... shall engage in the business of private detective or investigator ... or in the business of furnishing or supplying information as to the personal character or activities of any person ... or as to the character or kind of business and occupation of any person ... for fee, hire, or reward ... without having first obtained from the office of the secretary of state a license so to do[.]

Furthermore, W. Va.Code § 30–18–8 (1959) (Repl.Vol.1993) directed:

Any person ... who shall engage in the business of private detective as defined in section one [§ 30–18–1] without having first obtained a license as required under this article ... shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars.

The record in the case *sub judice* suggests that Morgan, who was employed by Walker's co-workers to observe Walker's whereabouts in preparation for their filing of the verified complaint, was not licensed to work as a private investigator. Consequently, Walker urges this Court to reverse the hearing examiner's, Commission's, and circuit court's findings as to Count 3, claiming that without Morgan's information, the Commission would not have been able to prove that he committed the acts alleged in that Count.

■ Notwithstanding the disfavor with which we view the Commission's apparent reliance upon such evidence, we are unable to render a decision on the merits of this contention. Our well-established practice has required us, on many previous occasions, to decline to determine an issue raised by the parties because that issue had not been passed upon by the circuit court. *See, e.g., Kronjaeger v. Buckeye Union Ins. Co.,* 200 W. Va. 570, 215, 490 S.E.2d 657, 672 (1997) (declining to determine issue on appeal that had not been finally decided by circuit court); *Trumka v. Clerk of Circuit Court of Mingo County,* 175 W.Va. 371, 374–75, 332 S.E.2d 826, 830 (1985) (stating that "the issue was ... not passed upon by the circuit court" and

that "[t]his ordinarily forecloses our review of the issue" (citations omitted)). The case presently before us is, unhappily, one such case. A review of the circuit court's memorandum opinion indicates that, although Walker had raised the issue of the unsavory testimony of an unlicensed private investigator in his petition for appeal before the circuit court, that court did not determine or otherwise render a final ruling with respect to this matter.

■ Despite our inability to resolve this issue on the merits, we nevertheless wish to take this opportunity to caution the Ethics Commission upon the utilization of, and reliance upon, evidence that has been obtained by allegedly unlawful methods. The fact that we decline further review of this alleged error does not signify that we approve or in any way condone the Commission's actions in using evidence that, under certain circumstances, would constitute a criminal offense. Rather, we emphasize that the Ethics Commission, which is charged with monitoring the conduct of state employees to ensure that their behavior conforms with the West Virginia Governmental Ethics Act, should hold itself to at least as high a level of ethical behavior as the level required of those employees whose conduct it oversees.

## 2. The Commission improvidently determined the procedural course of Count 3.

In sum, Walker's second contention is that the Commission improvidently determined the procedural course of Count 3. In this manner, Walker complains that the Commission erroneously remanded Count 3 to the hearing examiner; the hearing examiner improperly reversed his original decision as to Count 3; and the Commission incorrectly adopted the hearing examiner's second recommended decision as to Count 3.

First, Walker states that the Commission had no power to remand Count 3 to the hearing examiner. In this regard, Walker asserts that the Commission's powers are

(Repl.Vol.1993) (enumerating punishments for misdemeanor offense of unlicensed private investigation).

definitely determined by statute, and, in the absence of any statutory authority to remand, the Commission exceeded the scope of its permissible authority. *See* Syl. pt. 3, *Mountaineer Disposal Serv., Inc. v. Dyer,* 156 W.Va. 766, 197 S.E.2d 111 (1973) (holding, in part, that administrative agencies "must find within the statute warrant for the exercise of any authority which they claim"). *See also State Human Rights Comm'n v. Pauley,* 158 W.Va. 495, 497, 212 S.E.2d 77, 78 (1975) (providing that "an administrative agency . . . can exert only such powers as those granted by the Legislature"). Walker also contends the Commission cannot claim it has an implied authority to remand because its permissible powers are very intricately described in its governing statutes.

The Commission counters that remand was proper. In the proceedings below, the Commission rejected the hearing examiner's recommendation to dismiss Count 3 because it found that certain critical pieces of evidence had not been evaluated. The Commission then remanded this Count so that Walker could present evidence on his own behalf as Count 3 had been dismissed at the close of the Commission's case-in-chief. Accordingly, the Commission replies that it had the authority, as the ultimate fact finder, to remand the case in order to assure the reviewing court that the Commission had considered all proposed findings. *See Pauley,* 158 W.Va. at 498, 212 S.E.2d at 78–79 (defining authority of administrative agency as including reasonable and necessary implied powers).

Second, Walker proposes that the hearing examiner erred, upon remand, by reversing his original decision as to Count 3 because no additional dispositive evidence regarding this Count was presented at the remand hearing. Walker insists that the only evidence presented as to Count 3 during the second hearing tended to support his contention that he did, in fact, travel to Hinton on November 25, 1992. Because the Commission did not present additional evidence regarding Count 3 and because the hearing examiner earlier dismissed Count 3 either because the Commission had not established a prima facie case of an ethics violation or because the Commission's evidence did not prove, beyond

a reasonable doubt, that Walker had committed the acts alleged in Count 3, the hearing examiner erroneously reversed his prior dismissal of this Count. The Commission disputes Walker's contentions that the evidence was insufficient to support the hearing examiner's decision on remand.

Third, and last, Walker asserts that the Commission erred by adopting the hearing examiner's final recommendation as to Count 3. Walker argues that the hearing examiner improperly determined that "there is no evidence in this record to dispute that [Walker] did not go to Hinton, West Virginia, on November 25, 1992[.]" Rather, Walker contends that the evidence suggests that he could, in fact, have traveled to Hinton on the day in question. The Commission maintains that its decision to adopt the hearing examiner's final recommendation as to Count 3 was proper and amply supported by the record evidence.

■ With the presentation of these issues, the parties essentially request us to determine the extent of the Commission's authority to remand a case for redetermination by the hearing examiner and the power of the hearing examiner and the Commission to issue further decisions in the matter after it has been remanded. We have generally recognized that:

> [A]n administrative agency . . . can exert only such powers as those granted by the Legislature[,] and . . . if such agency exceeds its statutory authority, its action may be nullified by a court. A further sound principle of law . . . is that an administrative agency possesses, in addition to the powers expressly conferred by statute, such powers as are reasonably and necessarily implied in the exercise of its duties in accomplishing the purposes of the act[.]
>
> . . . .

"An administrative agency has, and should be accorded, every power which is indispensable to the powers expressly granted, that is, those powers which are necessarily, or fairly or reasonably, implied as an incident to the powers expressly granted."

*Pauley,* 158 W.Va. at 497–98, 212 S.E.2d at 78–79 (citations omitted) (quoting 1 Am. Jur.2d *Administrative Law* § 44). Expounding upon these principles, we have held, in Syllabus point 1, in part, of *Francis O. Day Co., Inc. v. West Virginia Reclamation Board of Review:*

> Administrative agencies and their executive officers are creatures of statute and delegates of the Legislature. Their power is dependent upon statutes, so that they must find within the statute warrant for the exercise of any authority which they claim. They have no general or common-law powers but only such as have been conferred upon them by law expressly or by implication.

188 W.Va. 418, 424 S.E.2d 763 (1992) (citations omitted). Despite the inescapable link between an agency's authority and the legislative statutes enumerating its powers, though, there are certain circumstances in which an agency may perform a function that is implied, but not specifically permitted, by statute. In this regard, we have stated that:

> Although an express grant of powers will be determined to include such other powers as are necessarily or reasonably incident to the powers granted, the powers should not be extended by implication beyond what may be necessary for their just and reasonable execution.

*Walter v. Ritchie,* 156 W.Va. 98, 108, 191 S.E.2d 275, 281 (1972) (citations omitted).

In the case *sub judice,* the Commission's actions in deciding a case are delineated, in part, by W. Va.Code § 6B–2–4 (1990) (Repl. Vol.1993). While no general power to remand is articulated in this provision, subsection (u) grants the Commission the authority to remand the matter for further proceedings "[i]f the commission determines that a criminal violation has not occurred[.]" W. Va. Code § 6B–2–4(u) (1990) (Repl.Vol.1993). Thus, the Commission definitely has the power to remand within the narrow context of cases in which no criminal violation has been found.

It is well-recognized, though, that administrative agencies have a broader authority to remand matters for further proceedings before a hearing examiner, even if such authori-ty is not specifically listed in the agency's statutory powers. This implied power to remand is necessary for the agency to render a full and complete decision on the matters which it is statutorily empowered to decide. *See* 2 Am.Jur.2d *Administrative Law* § 375 (1994) ("An agency has the power to remand a case to a hearing officer to obtain additional evidence on specified issues, for an explanation of the reasons underlying the decision, or for further proceedings. Such a remand may be for a limited purpose, without the need to completely reopen the hearing." (Footnotes omitted).).

█ Given the extensive power granted to the Ethics Commission, by W. Va.Code § 6B–2–4, to commence investigations of alleged ethics violations, to conduct hearings, and to render final decisions, it is apparent that the Commission has the inherent power to enter orders which may, on occasion, necessitate the remand of the case to the hearing examiner for further proceedings. In fact, the implied power of an administrative agency to remand is a necessary accompaniment to its statutory authority to make final determinations in contested matters. Accordingly, we hold the West Virginia Ethics Commission has the authority to remand cases to a hearing examiner for further proceedings in accordance with the Commission's directives, regardless of whether such authority has been specified in the statutes establishing the powers and duties of the Commission. Finding the Commission properly remanded this matter to the hearing examiner, we decline to address Walker's remaining contentions as to the propriety of the hearing examiner's ruling upon remand or the Commission's acceptance of this recommended decision.

3. *The Commission failed to abide by the statutory time periods prescribed by W. Va.Code § 6B–2–4(d) and W. Va.Code § 6B–2–4(l)*

Walker additionally claims that the Commission failed to comply with the forty-five-day time periods provided by W. Va.Code § 6B–2–4(d) and W. Va.Code § 6B–2–4(*l*).

W. Va.Code § 6B–2–4(d) (1990) (Repl.Vol. 1993) requires:

> Within the forty-five day period following the mailing of a notice of investigation, the investigative panel *shall proceed to consider* (1) the allegations raised in the complaint, (2) any timely received written response of the respondent, and (3) any other competent evidence gathered by or submitted to the commission which has a proper bearing on the issue of probable cause.

(Emphasis added). Although Walker raised this issue in the circuit court, the court refused this argument finding that "proceed to consider" is satisfied so long as the investigative panel has commenced its investigation within this time period. Walker disagrees with this characterization and contends that the investigation should be completed within this time period. *See State v. Turner*, 34 N.C.App. 78, 237 S.E.2d 318 (1977) (construing "proceed").

Walker argues further that the Commission failed to abide by another forty-five day requirement, namely: "[t]he final decision of the commission shall be made by the commission members who have not served as members of the investigative panel *in writing within forty-five days* of the receipt of the entire record of a hearing held before a hearing examiner[.]" W. Va.Code § 6B–2–4(*l*) (1990) (Repl.Vol.1993) (emphasis added). *See also* 11A W. Va.C.S.R. § 158–3–15.5 (1993) (same). Walker represents that the hearing examiner submitted the record to the Commission, following the first hearing, on August 22, 1994. However, the Commission did not render a final decision in this matter until May 4, 1995.

The Commission replies that it did not violate either forty-five day time limit. In this regard, the Commission indicates that it satisfied the forty-five day rule that the investigative panel "proceed to consider" the complaint allegations and other evidence, as required by W. Va.Code § 6B–2–4(d). Disagreeing with Walker's interpretation of this provision, the Commission proposes that this statute requires that the investigation merely be started within this time period.

Likewise, the Commission maintains that it complied with the decisional time period mandated by W. Va.Code § 6B–2–4(*l*). The Ethics Commission has the authority to enact rules to clarify the legislative statutes governing the Commission. One of these rules, 11A W. Va.C.S.R. § 158–3–17.1 (1993), provides that the entire administrative record includes: the hearing transcript or recording; all exhibits introduced into evidence during the hearing; all documents filed; and "the proposed decisions *and any briefs submitted by the parties.*" (Emphasis added). The Commission claims that it did not receive the entire record in this case until it received the transcript of the second hearing before the hearing examiner *and* the parties' briefs. It contends that it received the Commission's brief in support of the recommended decision on April 10, 1995, and that Walker decided not to file a brief. Because the final decision, rendered May 4, 1995, was within forty-five days of the receipt of the record in its entirety, the forty-five day rule was not violated.

■ At issue in this assignment of error is whether the Commission complied with the applicable time periods in its case management of Count 3. The first relevant statutory provision, W. Va.Code § 6B–2–4(d) (1990) (Repl.Vol.1993) directs the investigative panel to "proceed to consider" the complaint allegations, the response of the respondent, and any other evidence regarding probable cause which the panel has before it, within forty-five days of the date on which the commission notifies the respondent of the pending investigation. Walker contends that the language "proceed to consider" connotes that the investigative panel conclude its investigation within the prescribed time period. With Walker's characterization of this provision, we simply cannot agree.

■ As we have recited so many times before,

> " '[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)." Syllabus point 1, *Courtney v. State Dept. of Health of West*

*Virginia,* 182 W.Va. 465, 388 S.E.2d 491 (1989).

Syl. pt. 3, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Protection,* 191 W.Va. 134, 443 S.E.2d 602. Upon reviewing the statutory language before us, we conclude that the language employed in W. Va.Code § 6B–2–4(d) is clear and without ambiguity. The word "proceed" is commonly used in legal parlance to signify the commencement or beginning of a particular action. *See, e.g.,* William C. Burton, Legal Thesaurus 408, 896 (deluxe ed.1980); Bryan A. Garner, Dictionary of Modern Legal Usage 680 (2d ed.1995). *See also* 8 Oxford English Dictionary 1406–07 (1970); Random House Dictionary of the English Language 1542 (2d ed., unabridged 1987); Webster's New Collegiate Dictionary 910 (1979). In this manner, the circuit court correctly interpreted the plain meaning of "proceed to consider" when it commented that "[t]hat phrase requires the Commission to begin, but not necessarily to complete, its consideration of the complaint, the response, and the evidence available to it, within forty-five days." Therefore, because the record evidence suggests that the investigative panel did, in fact, commence its consideration of the evidence before it within forty-five days of the Commission's notice to Walker, we find that the Commission did not violate this statutory time period.

▮ Walker also claims that the Commission failed to issue a final decision within forty-five days of receiving the entire record in violation of W. Va.Code § 6B–2–4(*l*) (1990) (Repl.Vol.1993). We similarly find this contention to be without merit. W. Va. Code § 6B–2–4(k) (1990) (Repl.Vol.1993) pro-

vides that "[t]he recording of the hearing or the transcript of testimony, as the case may be, and the exhibits, together with all papers and requests filed in the proceeding, and the proposed findings of fact of the hearing examiner and the parties, constitute the exclusive record for decision by the commission[.]" [20]

A review of the record in this case indicates that the Commission issued its final decision within the requisite time constraints. Pursuant to W. Va.Code § 6B–2–4(k), the exclusive record includes the hearing examiner's proposed findings of fact. In the proceedings below, the hearing examiner held a consolidated hearing as to the remand determination of Count 3 and the initial evaluation of Count 5. The hearing examiner thereafter issued a recommended decision of this hearing on March 24, 1995,[21] and forwarded a copy of this decision to the Commission on that same date. Within forty-five days of this mailing date, which is not necessarily the same as the date on which the Commission received this recommendation, the Commission rendered its final decision in this matter on May 4, 1995. Thus, the Commission properly complied with this provision.

*4. The circuit court utilized the wrong standard of review in affirming the Commission's prior order as to Count 3.*

Walker asserts finally that the circuit court erroneously concluded that Rule 50 of the West Virginia Rules of Civil Procedure, which the hearing examiner apparently believed was the basis for Walker's motion for a directed verdict during the first hearing, governed a review of the underlying proceed-

---

**20.** The Commission alternatively suggests that reference to 11A W. Va.C.S.R. § 158–3–17 (1993) is necessary to discern the contents of the "entire record." This legislative rule more specifically designates the components of the "entire record": "The exclusive record for decision is: the transcript or recording of testimony at the hearing; exhibits introduced into evidence at the hearing; all documents filed in the proceeding, [sic] and the proposed decisions and any briefs submitted by the parties." 11A W. Va.C.S.R. § 158–3–17.1 (1993) (internal numbering omitted). However, because this regulation was adopted after the underlying proceedings had been commenced, we conclude that it does not govern our decision of this case.

**21.** At this juncture, we note that, under the regulations currently in effect, the decision of the hearing examiner in this case would have been untimely. *See* 11A W. Va.C.S.R. § 158–3–15.2 (1993) (providing that "[t]he hearing examiner has forty five [sic] (45) days from receipt of the proposed findings and conclusions from the parties to issue his or her recommended decision"). However, because this regulation was not in effect at the time of the underlying proceedings and because the parties do not raise this issue, we decline to further address this matter.

ings because the case had previously been disposed of on Rule 50 grounds. As a result, the circuit court, analogizing the proceedings to a civil case, reviewed the Commission's findings of fact for an abuse of discretion and applied a *de novo* review to the Commission's conclusions of law.

Walker contends, though, that the administrative proceedings before the circuit court were not governed by the Rules of Civil Procedure, but rather by 11A W. Va.C.S.R. § 158–1–1 (1990),[22] which governs the Commission's administration and enforcement of the Ethics Act. *See also Broomfield v. Jackson,* 18 Va.App. 854, 858, 447 S.E.2d 880, 882 (1994) (stating generally that "rules of civil procedure do not apply to administrative proceedings unless the rules specifically so provide" (citations omitted)). Walker represents that the West Virginia Rules of Civil Procedure do not state that they apply to administrative proceedings. Likewise, W. Va.Code § 6B–2–4 (1990) (Repl.Vol.1993), governing Ethics Commission proceedings, is silent as to the applicability of the Rules of Civil Procedure. Accordingly, the underlying administrative proceedings were more akin to a criminal case because the Commission was required to "find[ ] by evidence beyond a reasonable doubt" that the party against whom charges had been filed had committed the alleged ethics violations. W. Va.Code § 6B–2–4(q) (1990) (Repl.Vol.1993). As such, the proper review of the case should have been the standard enunciated in Syllabus point 2, in part, of *State v. Broughton,* 196 W.Va. 281, 470 S.E.2d 413 (1996): "Upon a motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution.... [T]he question is *whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.*" (Emphasis added; citations omitted). Thus, Walker maintains that the proper standard was whether the Commission had presented "substantial evidence" to establish, beyond a reasonable doubt, that

Walker had committed the ethics violations charged in Count 3.

On the other hand, the Commission suggests that the circuit court acted within the proper scope of judicial review of an administrative agency's decisions. A court may set aside an agency's findings of fact only if such findings are clearly or plainly wrong. *Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). In the same manner, a reviewing court may not reverse an agency's findings merely because the court would have decided the case differently. *Frank's Shoe Store v. West Virginia Human Rights Comm'n,* 179 W.Va. at 56, 365 S.E.2d at 254. The Commission asserts that the circuit court properly applied this standard in affirming the Commission's decision with respect to Count 3: the record evidence established, beyond a reasonable doubt, that Walker had committed the ethics violations contained in Count 3.

We note at the outset the well-reasoned approach to discerning the applicable standard of review proposed by Walker. Nevertheless, we find that the circuit court did not utilize the wrong standard of review in ruling upon the parties' appeals from the final decision of the Ethics Commission. As we noted in Section II.A., above, a circuit court reviewing an agency decision has the discretion to affirm the agency order or to remand the matter for further proceedings. W. Va.Code § 29A–5–4(g) (1964) (Repl.Vol.1993). In addition, the circuit court must reverse the agency decision if the "substantial rights of the petitioner or petitioners have been prejudiced" as a result of various enumerated acts by the agency, including rendering an order that is "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record" or "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.*

 We have explained the scope of the circuit court's review of an agency deci-

---

22. Upon consulting 11A W. Va.C.S.R. § 158–1–1 (1990), we have been unable to establish which particular subsection Walker relies upon for this argument. A brief review of this provision demonstrates that it governs generally the "practice and procedure" to be followed by the Ethics Commission in carrying out its statutory duties, but does not provide any specific guidance for circuit court review of the Commission's final decisions.

sion seizing upon the "'clearly wrong'" and "'arbitrary and capricious'" standards delineated by statute. *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W.Va. at 334–35, 472 S.E.2d at 419–20. In employing these standards, the "reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision." *Frank's Shoe Store v. West Virginia Human Rights Comm'n*, 179 W.Va. at 56, 365 S.E.2d at 254 (citation omitted). More simply stated, "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. at 292, 387 S.E.2d at 527 (citations omitted).

■ Turning now to the record of the circuit court proceedings in the present case, we conclude that the circuit court did not err in reviewing the Commission's final decision under an abuse of discretion/clearly erroneous/*de novo* standard of review as enunciated in *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995), because the *Phillips* standard is analogous to the standard required by W. Va.Code § 29A–5–4(g). The circuit court enunciated that the standard by which the Commission should have reviewed the hearing examiner's second recommended decision mirrored the appellate standard of review of circuit court orders set forth by this Court in *Phillips v. Fox*:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

193 W.Va. at 661, 458 S.E.2d at 331 (citation omitted). Similarly, as noted above, W. Va. Code § 29A–5–4(g) commands the circuit court, when reviewing an agency's final order, to consider whether the agency abused its discretion in rendering the decision; to ascertain whether the agency's final determination was clearly wrong given the record evidence; and to determine whether any errors of law affected the decision.

In the proceedings below, the circuit court evaluated the Commission's review of the hearing examiner's second recommended decision employing the *Phillips* standard. By separately evaluating the Commission's rulings as to factual findings and legal conclusions, the circuit court necessarily followed a similar approach itself in reviewing the Commission's final decision. As this method of review parallels the standard set forth in W. Va.Code § 29A–5–4(g), the circuit court employed an appropriate standard of review in evaluating the parties' contentions as to Count 3. Accordingly, we find no error in this regard.

## III.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the Circuit Court of Raleigh County and remand this case for further proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded with Instructions.