IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**December 23, 2024**

**JOYCE C.,**
**Appellant Below, Petitioner**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-140**     (Board of Review Action No. 23-BOR-3385)

**WEST VIRGINIA DEPARTMENT**
**OF HUMAN RESOURCES, BUREAU FOR**
**SOCIAL SERVICES,**
**Respondent**

**MEMORANDUM DECISION**

Petitioner Joyce C. appeals the February 2, 2024, Decision entered by the West Virginia Office of Inspector General Board of Review ("BOR").[1] In that decision, the BOR upheld prior substantiated allegations of neglect against Joyce C. West Virginia Department of Human Resources, Bureau for Social Services ("Department") timely filed a response in support of the BOR's Decision. Joyce C. filed a reply.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the BOR's Decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This matter concerns prior substantiated allegations of neglect against Joyce C. and her now-estranged-husband Raymond C. that occurred in the years 2004 and 2008. Though it is unclear from the record, it appears what may have prompted Joyce C.'s appeal of the prior substantiations is the removal of Joyce C.'s grandchildren from her home sometime

---

[1] Consistent with the Supreme Court of Appeals of West Virginia's long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Joyce C. is self-represented. The Department is represented by Patrick Morrisey, Esq., and Michael L. Jackson, Esq.

in 2023.[3] On November 1, 2023, Petitioner Joyce C. filed a Child Protective Services ("CPS") hearing request form which sought to "sponge all the CPS cases off my record has been over 18 years and CPS cases have been closed dismissed."[4]

The portion of the form completed by CPS staff indicates that there were three prior substantiated findings against Joyce C: (1) Intake Number 10284429, Date January 26, 2004, for "Risk Only"; (2) Intake Number 10554815, Date January 11, 2008, for "Inadequate Housing"; and (3) Intake Number 10558697, Dated January 31, 2008, for "Housing & Educational Neglect."

On November 7, 2023, CPS sent a letter to Joyce C. that indicated that CPS approved an override of Intake Number 10284429 for "Risk Only"; CPS denied reversal of Intake Number 10554815 for "Dangerous Housing"; and CPS denied reversal of "Inadequate Housing" but approved an override of "Educational Neglect" for Intake Number 10558697. The letter clarified that the approved overrides would now reflect that the prior findings were not substantiated. However, regarding the denied reversals, a hearing would be scheduled in front of the Office of Inspector General Board of Review for Joyce C. to contest the prior findings. Therefore, after CPS review, only Intake Numbers 10554815 and 10558697 were at issue.

In regard to Intake Number 10554815 dated January 11, 2008, according to the Initial Assessment and Safety Evaluation Worksheet and Conclusion, at the time of the assessment, there were three adults, including Joyce and Raymond, living at the home, as well as two children, L.C. and M.C., ages 16 and 14 respectively. The other adult living at the home was Joyce C. and Raymond C.'s adult son. Joyce C. and Raymond C. have an additional adult son that was not living at home. The assessment indicates that M.C. would receive a bath at school in the mornings and the school purchased him shoes to wear. It went on to state that Joyce C. informed the CPS worker that M.C. is bullied at school for the way he smells and that is why he misses so much school. In regard to the home, the assessment noted that the home was not fit to live in. There were eleven dogs total living at the property, six of which lived inside. The family did not pick up "from the dogs making a mess." The floors were so dirty that "it appeared to have inches of dirt on them." The assessment notes that the family was ticketed for an open dump and the health department was pursuing charges for rodent harborage, mosquito breeding, and an improperly

---

[3] It is also unclear from the record how her grandchildren came to be in Joyce C.'s care. However, prior substantiations of abuse and neglect can disqualify a person from engaging with the Department as a placement for children. *See generally* W. Va. Code § 16B-15-1 et. seq. (2024); W. Va. Code R. § § 78-2-1 to -2-27 and § 78-20-1 to -20-18.

[4] Though this matter concerns substantiation that occurred in 2004 and 2008, it appears that Joyce C.'s history with CPS goes back to 1999.

maintained sewage system. It also notes that charges may be pursued for operation of an unlicensed salvage yard and animal cruelty.

In regard to Intake Number 10558697 dated January 31, 2008, according to the Initial Assessment and Safety Evaluation Worksheet and Conclusion, it appears this referral was related to the same conduct under investigation in Intake Number 10554815 as most of the information appears to have been copied into this document. There is a comment in this document from the CPS worker regarding a telephone conversation with "Mike" about "the boy." It states that Mike is concerned about the child because the child would jump out in front of cars with a gun. The child usually had his face painted and a blonde wig on. Mike stated that at some point, the child jumped out in front of his son and pointed a gun at him. Mike reported that the child would shoot his gun at anything, and the phone and power companies have had to fix lines from the boy shooting them.

Eventually, as a result of Intake Numbers 10554815 and 10558697, Joyce C. and Raymond C. entered into a protection plan with CPS where the children stayed with a relative named Nancy T. until they made the necessary repairs to the property. The children were eventually returned to Joyce C. and Raymond C.

On January 8, 2024, a hearing was held by the BOR in regard to Joyce C.'s appeal of the substantiated findings related to Intake Numbers 10554815 and 10558697. Joyce C. appeared pro se. Jennifer Hall, CPS Supervisor, appeared on behalf of the Department.[5] Ms. Hall testified consistent with the findings in the Initial Assessment and Safety Evaluation Worksheet and Conclusions. Joyce C. then testified and attempted to minimize the allegations against her by stating they only needed to replace a connector on the septic tank, the trash in the yard was actually behind the house not in the front yard, there was not an open dump because it was less than 500 pounds of trash, some of the trash in the yard were children's toys, her children were always bathed and wore clean clothes to school, Nancy T. was a drug addict, "Mike" was actually the one shooting everything, and there were only five dogs in the yard. She did admit to having to pay a $200.00 fine plus court costs for being ticketed for an open dump.

On February 2, 2024, the Board of Review issued the Decision now on appeal. In that Decision, the Board of Review went over the allegations in Intake Numbers 10554815 and 10558697 and found that there were at least five and up to eleven dogs at the residence, there was an odor coming from the home, the home was dirty and cluttered, the septic tank was broken, Joyce C. was cited for an open dump, and the county health department pursued charges for rodent harborage, mosquito breeding, and improperly maintained sewage system. The Board of Review then cited the statutory definition of neglect before concluding that the allegations against Joyce C. were correctly substantiated as the DHHR

---

[5] Joyce C. indicated at the hearing that she and Raymond C. were separated.

3

proved by a preponderance of the evidence that Joyce C. failed to provide necessary shelter by allowing her children to live in clearly unsafe and unsanitary conditions.

In this appeal, we are guided by the following standard of review:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4 (2021).

"The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

On appeal, Joyce C. argues that BOR erred by adopting CPS's version of the facts. We disagree. This Court "must evaluate the record of [the] agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision." Syl. Pt. 1, in part, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997) If there is evidence to support the agency's decision, then this court must affirm "regardless of whether the court would have reached a different conclusion on the same set of facts." *Id*.

Here, the BOR was not clearly wrong to find that Joyce C., at the times covered by the findings, failed to provide necessary shelter by allowing her children to live in clearly unsafe and unsanitary conditions. Such a finding by the BOR is supported by the record. Further, Joyce C. does not otherwise assert that the BOR's Decision is in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary

4

or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Accordingly, the February 2, 2024, Decision by the BOR is affirmed.

Therefore, based on the foregoing, the February 2, 2024, Decision is affirmed.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear