# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Bobby G. Daniel,**
**Respondent Below, Petitioner**

**vs)  No. 12-0890** (Raleigh County 11-C-663)

**Brian Stump, Humane Officer of Raleigh County,**
**Petitioner Below, Respondent**

**FILED**

June 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Bobby G. Daniel, by counsel Michael T. Clifford and Richelle K. Garlow, appeals the Circuit Court of Raleigh County's order entered on June 22, 2012, awarding custody of petitioner's horses to respondent for disposition. Respondent Brian Stump, Humane Officer of Raleigh County, by counsel Edgar E. Bibb III, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is an eighty-one year old resident of Raleigh County and owns over 100 acres of land upon which he kept horses. Beginning in January of 2011, the sheriff ordered one of his deputies, Bobby Stump,[1] to begin checking on the horses. Bobby Stump delivered hay to the animals through April of 2012. In August of 2011, Detective Brian Stump, as Humane Officer for Raleigh County, filed a complaint and affidavit regarding his concern that the horses were living in poor conditions and were not being fed by petitioner, and requested an order allowing veterinary examination of the animals. The order was granted, and the horses were found to have inadequate pastures and were contaminated by lice.  In December of 2011, petitioner and the county reached an agreement whereby petitioner would reduce the number of horses on his property to ten horses and one mule. Petitioner previously owned up to forty-four horses. The agreement recognized that foals may be born and thus gave petitioner until July 1, 2012, to reduce to ten horses.

In March of 2012, respondent advised the court that petitioner was not abiding by the agreement after complaints that petitioner was adding horses to his herd after reducing their number to approximately a dozen. A hearing was held wherein petitioner, Bobby Stump, and several witnesses testified. Respondent argued that the fencing around petitioner's land was inadequate to contain the horses, which routinely got out and encroached on neighbors' land and

---

[1]Stump is an experienced horse trainer and farrier.

the county road. After this hearing, the court reinstated the July 1, 2012, deadline for petitioner to have only ten horses and one mule, and ordered petitioner to repair and/or reinforce his fence.

On April 4, 2012, respondent filed for and received an Emergency Order to seize the horses, based on allegations that the horses were still getting out, and the horses were removed on April 5, 2012. Petitioner's previous counsel withdrew and current counsel was then retained. At that time, petitioner filed a motion to dismiss based on lack of jurisdiction of the circuit court over animal seizure. A hearing was held on June 8, 2012, at which time the motion to dismiss was denied because it was considered waived due to prior counsel's failure to raise the issue. There was extensive testimony regarding the seizure of the horses, the state of petitioner's land, and the condition of the horses. By order entered on June 22, 2012, the circuit court ruled that the horses were neglected as a matter of law, upheld the seizure, and ordered petitioner to reimburse respondent for the costs incurred in caring for the horses.

On appeal, petitioner argues two assignments of error. First, he argues that the circuit court erred in seizing petitioner's horses because the horses were adequately cared for and not in imminent danger, thereby depriving petitioner of his property without just cause. Secondly, he argues that circuit court lacked jurisdiction over this action, as jurisdiction is conferred upon the Magistrate Court by statute pursuant to West Virginia Code § 7-10-4.

This Court has repeatedly noted the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review." Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl. Pt. 5, *Peters v. Rivers Edge Mining, Inc.*, 224 W.Va. 160, 680 S.E.2d 791 (2009). As to the seizure of the horses, a review of the record shows that respondent presented more than enough evidence to support the fact that the horses were not well taken care of and were in imminent danger. The testimony revealed that the horses were violent toward one another; that the fence was inadequate pursuant to the relevant statutes governing fence height, leading to the horses getting out of the pasture regularly; that the horses were in imminent danger when they got out of the pasture as they were often in the road; that the horses often did not have adequate food; and, that the horses' health was not maintained. This Court finds that the circuit court's order was not an abuse of discretion nor was it clearly erroneous.

Petitioner argues that a circuit court only has jurisdiction conferred by statute, and West Virginia Code § 7-10-4, which governs animal seizure, places jurisdiction with magistrates. The statute states as follows:

> (b) The owner or persons in possession, if his or her identity and residence are known, of any animal seized pursuant to subsection (a) of this section shall be provided written notice of the seizure, his or her liability for the cost and care of

the animal seized as provided in this section and the right to request a hearing in writing before a magistrate in the county where the animal was seized. The magistrate court shall schedule any hearing requested within ten working days of the receipt of the request. The failure of an owner or person in possession to request a hearing within five working days of the seizure is prima facie evidence of the abandonment of the animal. At the hearing, if requested, the magistrate shall determine by a preponderance of the evidence if the animal was abandoned, neglected or deprived of necessary sustenance, shelter, medical care or reasonable protection from fatal freezing or heat exhaustion or otherwise treated or used cruelly as set forth in this section.

W.Va. Code § 7-10-4(b). However, petitioner does not address the remainder of West Virginia Code § 7-10-4, which states, in pertinent part,

(h) The provisions of this section do not apply to farm livestock, as defined in subsection (d), section two, [§ 19-10B-2] article ten-b, chapter nineteen of this code; poultry, gaming fowl or wildlife kept in private or licensed game farms if kept and maintained according to usual and accepted standards of livestock; poultry, gaming fowl, wildlife or game farm production and management; nor to the humane use of animals or activities regulated under and in conformity with the provisions of 7 U.S.C. § 2131, et seq., and the regulations promulgated thereunder.

West Virginia Code § 19-10B-2(d) defines livestock as follows: "'Livestock' means cattle, horses, swine . . . ." Therefore, West Virginia Code § 7-10-4 does not confer exclusive jurisdiction in this matter to the magistrate court. We find no error in the circuit court's refusal to grant petitioner's motion to dismiss.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II