STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

December 7, 2015
**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

*In Re*: **The Adoption of S.A.W.**

**No. 14-0969** (Nicholas County 13-A-5)

**MEMORANDUM DECISION**

Petitioner D.S.,[1] *pro se*, appeals two orders of the Circuit Court of Nicholas County regarding the adoption of the minor child, S.A.W. In the first order, entered on August 22, 2014, the circuit court determined that petitioner, S.A.W.'s biological father, abandoned her pursuant to West Virginia Code § 48-22-306, and granted the petition of respondents N.W.B. and C.B., S.A.W's mother and her husband, to allow C.B. to adopt S.A.W. In the second order, also entered on August 22, 2014, the circuit court deemed S.A.W. adopted by Respondent C.B. and changed her last name to that of C.B. Respondents, by counsel W. Brad Dorsey, filed a summary response, and petitioner filed a reply.[2]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Adoption cases are confidential pursuant to West Virginia Code § 48-22-702(a). The parties and the minor child are referred to only by their initials.

[2]Respondents also filed a motion to have transcripts produced of the September 27, 2013, and March 7, 2014, hearings before the circuit court and a motion to have the costs of producing the transcripts taxed to petitioner. Petitioner filed a response to both motions on November 10, 2014. By an amended scheduling order, entered on December 9, 2014, this Court granted the motion for the production of the September 27, 2013, and March 7, 2014, transcripts. Respondents' motion for costs was deferred, and respondents were directed to file a statement of costs. In their statement of costs, filed on April 13, 2015, respondents state that the total cost of the transcripts was $2,567.67, and they attached invoices in support thereof. We will address respondents' motion to have the costs of the transcripts taxed to petitioner herein.

1

S.A.W. was born on April 30, 2010. Petitioner is S.A.W.'s biological father. Petitioner and Respondent N.W.B were never married. Since 2000, petitioner has been married to another woman who did not know of S.A.W.'s existence until after respondents filed their petition for adoption.

Respondents married on February 25, 2012, and S.A.W. has resided with her mother and Respondent C.B. since that time. On January 7, 2013, respondents filed their petition to allow Respondent C.B. to adopt S.A.W. in the Circuit Court of Nicholas County. Petitioner filed a response to respondents' petition on March 4, 2013. A final hearing was originally held on September 27, 2013, but was continued so that the parties could engage in settlement discussions. The parties were unable to reach an agreement, and the final hearing occurred on March 7, 2014, at which the parties presented witnesses and tendered exhibits. By separate orders entered on August 22, 2014, the circuit court (1) determined that petitioner abandoned S.A.W. pursuant to West Virginia Code § 48-22-306; (2) granted respondents' petition to allow Respondent C.B. to adopt S.A.W.; and (3) deemed S.A.W adopted by Respondent C.B. and changed her last name to that of C.B. Petitioner now appeals the circuit court's August 22, 2014, orders, and argues that the circuit court clearly erred in finding that petitioner abandoned S.A.W. and abused its discretion in granting respondents' petition for adoption. We disagree.

This Court has previously held that

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 110, 492 S.E.2d 167, 169 (1997). "An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995).

After our review of the record on appeal, we find that the circuit court's orders correctly resolve all issues raised by petitioner except for the two issues that we now address. Petitioner first contends that the circuit court admitted at the March 7, 2014, hearing that the court did not have access to the court file of the separate case petitioner filed in the Family Court of Wood County in August of 2011, in which petitioner sought an allocation of parenting time with regard to S.A.W.[3] Petitioner's contention is not supported by the transcript of that hearing, in which the circuit court

---

[3]At the time of the filing of petitioner's Wood County petition, Respondent N.W.B. and S.A.W. were residing in that county. The Wood County case was subsequently transferred to Nicholas County, and the circuit court consolidated it with the adoption case. By an order entered on February 24, 2014, the circuit court bifurcated the issues, finding that it would address the issue of parenting time (if necessary) only after it decided the adoption petition.

stated that it was going to "have the Clerk send me up a complete copy of [the Wood County] file." Furthermore, in the first of its two orders, the circuit court stated that it was taking "[j]udicial [n]otice of the contents of the Court File" from the Wood County case. Therefore, we reject petitioner's assertion that the circuit court did not have the documents that petitioner argues that the court should have had.

Second, petitioner asserts that his testimony as to whether he abandoned S.A.W. pursuant to West Virginia Code § 48-22-306 was more credible than that of respondents. However, pursuant to *Walker*, we review the circuit court's factual findings only for clear error. In making its credibility determinations, the circuit court heard the parties' testimony and was able to observe their demeanors on the stand. While petitioner also challenges the circuit court's ultimate conclusion that he abandoned S.A.W., for the reasons stated by the circuit court, we determine that the circuit court did not clearly err in finding that petitioner abandoned S.A.W. pursuant to West Virginia Code § 48-22-306.

Having reviewed the circuit court's August 22, 2014, orders, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all other issues raised by petitioner in this appeal. The Clerk is directed to attach a copy of each of the circuit court's orders to this memorandum decision.[4] We conclude that the circuit court did not abuse its discretion in granting respondents' petition to allow Respondent C.B. to adopt S.A.W.

As to the costs of September 27, 2013, and March 7, 2014 hearing transcripts, those costs are taxed to petitioner. We reviewed both transcripts during our consideration of petitioner's appeal in this matter. As noted above, we find no error in—and now affirm—the circuit court's August 22, 2014, orders. Therefore, pursuant to Rule 24(a) of the West Virginia Rules of Appellate Procedure, we grant respondents' motion to tax the costs for the production of the September 27, 2013, and March 7, 2014 hearing transcripts to petitioner in the amount of $2,567.67.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** December 7, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[4]Certain names have been redacted. *See* fn. 1, *supra*.

3

# IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

IN RE: ██████████████ON OF A MINOR CHILD, NAMELY, S██████A███████W███████

ADOPTION NO.: 13-A-5

## ███████████████FINAL ORDER

On the 7th day of March, 2013, this matter came on for a Final Hearing on the Petitioner's Petition of Adoption before the Honorable J. Lewis Marks, Jr., sitting by Special Assignment[1]. The Petitioners, C██████ B███████ and N████████ W████-B██████ appeared in person, and by Counsel, W. Brad Dorsey. D████ S██ appeared in person, and by Counsel, David R. Karr, Jr. The Petition for Adoption alleges that the subject child's biological father, D███ ███S██, abandoned the infant, pursuant to *West Virginia Code* § 48-22-306. S██ filed a Responsive Pleading contesting the Petition for Adoption and denying the allegations of abandonment.

Whereupon, pursuant to Rule 201 of the *West Virginia Rules of Evidence*, the Court does take Judicial Notice of the contents of the Court File in Wood County Civil Action No., 11-D-754, which matter was formerly pending in the Wood County Family Court but was transferred and consolidated with the instant case by Orders entered on August 6, 2013, by the Wood County Family Court and on August 2, 2013 by the Nicholas County Circuit Court.

Whereupon, the Petitioners presented the sworn testimony of Blaine Myers (who appeared by telephone with the permission of the Court), N████ ████████ W████-B██████ and Clinton Rad Bischoff, as well as other evidence and exhibits in

---

[1] By Agreement, the parties appeared before Judge Marks in the Circuit Court of Harrison County instead of the Circuit Court of Nicholas County, although Judge Marks was willing to travel to Nicholas County.

CALLAGHAN & CALLAGHAN, PLLC ATTORNEYS AT LAW 600 MAIN STREET SUMMERSVILLE, WV 26651

1

support of their Petition for Adoption. The foregoing witnesses were subject to cross-examination by the Respondent.

Whereupon, the Respondent presented the sworn testimony of Robert W██ ██ Shane M██████, D██ S██ and Darla S██ (who appeared by telephone with the permission of the ███); as well as other evi███ and exhibits in support of their case. The foregoing witnesses were subject to cross-examination by the Petitioners.

Whereupon, after all testimony and evidence had been presented, the Court took this matter under advisement and provided both parties with the opportunity to submit a written closing argument and, if desired, proposed findings of fact and conclusions of law.

NOW, THEREFORE, the Court has considered the testimony of the various witnesses, the pleadings filed by both parties, the evidence and exhibits presented, and the arguments of Counsel, as well as pertinent legal authorities. As a result of these deliberations, the Court makes the following findings of fact and conclusions of law[2]:

### Jurisdiction and Venue

1. Pursuant to *West Virginia Code* § 48-22-501, Jurisdiction and Venue are appropriate in Nicholas County, West Virginia.

---

[2] It is noted that a Circuit Court's ultimate decision to grant or deny a Petition for Adoption is reviewed under an abuse of discretion standard. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997). See also *In re Adoption of D.T.*, 12-1512, 2013 WL 5476400 (W. Va. Oct. 1, 2013)

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

2

## Procedural History

2. On January 7, 2013, the Petitioners, N███ █████ W████-B███ (hereinafter "W█████") and C███ ██ B████ (hereinafter "B█████") filed a Petition for Adoption in the Circuit Court of Nicholas County alleging that the biological father, D███ ██ S██ (hereinafter "S███") had abandoned S█████ A█████ W███ (hereinafter "S██████"), who was born on April 30, 2010.

3. On or about March 4, 2013, S██ filed an Answer and Motion to Dismiss. Additionally, on March 4, 2013, a status conference was held and S███ withdrew his prior objections related to improper service of process and this matter was scheduled for further proceedings. See Order Scheduling Further Proceedings ¶3, entered March 13, 2013.

4. On July 24, 2013, a hearing was held on S███s Motion to Dismiss filed on March 4, 2013, and a Motion for Declaratory Judgment filed by S██ on May 2, 2013. [3] The Motion to Dismiss was denied and this matter was scheduled for further proceedings. See Order Regarding Pending Motions, entered August 2, 2013.

5. A Final Hearing was initially scheduled to be held on September 27, 2013; however, Counsel jointly moved the Court to continue this matter to a later date and represented to the Court that settlement discussions concerning a tentative agreement were in progress. In support thereof, Counsel stated that it was anticipated that S██ would consent to the Petition for Adoption and that the

---

[3] The Respondent's Motion for Declaratory Judgment was based on the fact that Petitioner's Counsel, W. Brad Dorsey, wrote a letter to Respondent's counsel, David Karr, dated April 22, 2013. The purpose of this letter was to see if Mr. S██ would be willing to stipulate that he would voluntarily produce Mrs. S██ as a witness at the Final Hearing in this matter or to determine whether an out of state subpoena would be required to compel her to attend. The Respondent's Motion for Declaratory Judgment contended that Dorsey and/or Petitioners was extorting S██ since his wife was unaware the subject child existed. This Motion was later withdrawn by S██.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

3

parties would negotiate an agreement as to Mr. S███ receiving Post-Adoption Visitation.

6. For reasons unknown to the Court, an Agreement was never consummated by the parties and a status conference was scheduled for November 4, 2013. The Court determined that a Final Hearing would be rescheduled for January 14, 2014. Additionally, the Court ruled that it would hear evidence on the Adoption Petition and if the Petition were denied it would hear evidence related to custodial allocation the same day. The Court granted Petitioners leave to file a written Motion to Bifurcate the proceedings. On December 30, 2013, the Petitioners filed a Motion to Bifurcate the adoption and custody proceedings. No Response was filed by the Respondent. By Order entered February 24, 2014, the Court granted Petitioners' Motion, for the reasons set forth therein.

7. A Final Hearing was rescheduled for January 14, 2014; however, it was continued upon Respondent's Motion and once again rescheduled for March 7, 2014, with timely and proper notice being given to all parties.

## Burden of Proof and Applicable Law

8. "The standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In Re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973); Syllabus Point 2, Joshua *D.R. v. David A.M.*, 231 W. Va. 545, 746 S.E.2d 536, 537 (2013). However, it is important to keep in mind that "[a]lthough parents have substantial rights that must be protected, the primary goal ... in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, in part, *In re*

CALLAGHAN & CALLAGHAN, PLLC ATTORNEYS AT LAW 600 MAIN STREET SUMMERSVILLE, WV 26651

4

*Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ; Syllabus Point 4, *Joshua D.R. v. David A.M.*, 231 W. Va. 545, 746 S.E.2d 536, 537 (2013).

9. To determine abandonment as a part of adoption proceedings, *West Virginia Code* § 48-22-306, provides, in pertinent part: "(a) Abandonment of a child over the age of six months shall be presumed when the birth parent:(1) Fails to financially support the child within the means of the birth parent; and(2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition."

10. After an adoptive parent has proven the presumption of abandonment, the biological parent has the opportunity to rebut this presumption. Subsection (d) of *West Virginia Code* § 48-22-306 provides: "(d) Notwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child: Provided, That in no event may incarceration provide such a compelling circumstance if the crime resulting in the incarceration involved a rape in which the child was conceived."

11. Moreover, *West Virginia Code* § 48-22-102 defines abandonment as "conduct by the birth mother, legal father, determined father, outsider father, unknown father or putative father that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child."

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

5

## Findings of Fact

12. S█████ was born on April 30, 2010, in Morgantown, Monongalia County, West Virginia. The biological mother of the child is W███. On February 25, 2010, W███ married the Co-Petitioner, B███. W███ and B███ are residents of Nicholas County, West Virginia. The biological father of the child is S██, who at all relevant times resided in Fort Lauderdale, Florida.

13. W███ and S██ were never married to one another. Their relationship began in 2001, while S██ was married to Darla S██. W███ initially did not know that S██ was married and found out some time later when Darla S██ confronted her about the relationship W███ had with her husband. For several years thereafter, S██ and W███ had a sporadic relationship. W███ testified that in the summer of 2009, S██ told her that he was divorced and she visited him in Florida. It was during the summer of 2009 that W███ became pregnant with S█████. However, S██ has never divorced Darla and remains married to her today.

14. During W████ pregnancy, S██ did not attend any of her doctor appointments or provide her with any financial support.

15. On April 30, 2010, S█████ was born at Ruby Memorial Hospital in Morgantown, Monongalia County, West Virginia. S██ was present for a couple of days and came to the hospital. He did not financially contribute to S█████'s birth expenses[4] or provide W███ with any baby items, such as a crib, car seat or clothing. S██ provided W███ with no financial support whatsoever. However,

---

[4] The Court notes that it is likely that S██ could have placed S█████ on his Wife's health insurance had she been made aware of her existence.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
UMMERSVILLE, WV 26651

S███ did purchase one box of size five diapers and mailed them to W████ after he returned to Florida.

16. It is undisputed that at the time of S███████'s birth on April 30, 2010 and at the time of the filing of the Petition for Adoption that S██'s wife, Darla, had no knowledge of S██████.

17. As evidenced by several e-mails admitted into evidence, in the months following S██████'s birth, W████ attempted to involve S███ in S██████'s life by sending him e-mails about how the child was doing and by sending him pictures of S██████.

18. In June of 2010, S███ came to Wood County, West Virginia for a few days. He brought W████ certain items she had placed in storage and watched S██████ the first day W████ returned to her employment. It was anticipated that he S██ be staying longer to help out. The one day S██ watched S██████ and the day S██████ was born were the only times S██ ever had any contact with S██████.

19. During the summer of 2010, W████ offered to fly with the child to Florida, at her expense, to spend time with S██; however, S██ declined (presumably because his wife was unaware of S██████ and his continued relationship with W███).

20. S██ testified that he underwent back surgery in July of 2010 and that the surgery was "botched." He testified that he experienced several complications that resulted in him being hospitalized and/or cared for in his home by nurses for several months thereafter. He contends that he was medically unable to travel to West Virginia for the majority of the remainder of 2010. It is noted that

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
, 600 MAIN STREET
SUMMERSVILLE, WV 26651

in July of 2012, the Social Security Administration determined that S███ was disabled with an onset date of July 2010. However, S███ admitted that his medical condition did not impact his ability to send cards or gifts to S██████ and that he did not do so.

21. W█████ testified that around Thanksgiving of 2010, she rearranged her work schedule so S███ could come and visit S███████; however, when S███ found out W████ was dating B██████ and that he could not stay in her home he became angry and did not come.

22. W█████ further testified that around Christmas of 2010, S███ asked if he could come visit but she had already made plans to go to New York. She attempted to arrange another time for S███ to visit but he declined. Even though W██████ told S███ that she would not be there, S███ drove to West Virginia anyways. He became upset after he arrived, he called W██████' parents repeatedly and he went to visit W██████' father, Robert W█████, against W██████' directive not to involve her family with their issues.

23. According to the evidence presented, there was not any significant contact between S███ and W██████ until May of 2011. In May of 2011, some e-mails were exchanged between S███ and W██████.

24. On August 18, 2011, S███ was in West Virginia visiting a sick relative. He e-mailed W████ and asked to see S███████. W██████ testified that she could not rearrange her work schedule on such short notice to accommodate S███s impromptu visit to West Virginia. About a week later, S███ contacted W██████' family but did so in a threatening manner, stating that W██████' actions has "potential media implications".

CALLAGHAN & CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

8

25. The Court finds that S███s ability to travel to and from West Virginia on a regular or consistent basis to see S███████ was **significantly** impacted by the fact that S███s wife was unaware of S███████.

26. In August of 2011, S███ filed a Petition for Allocation of Custody in Wood County, West Virginia, which is where N████ W████ and the minor child S███████ then resided.

27. At the time of filing the Petition in Wood County, S███ had only seen S███████ on two occasions. He rarely inquired about her well-being or health, he never had provided her with any financial support whatsoever and he never sent her a gift, birthday card, Christmas present, etc. S███ was aware of W█████' address as evidenced by his ability to serve W████ with a Petition.

28. The Wood County Family Court case has a complex factual and procedural history that can be summarized as follows[5]:

   a. On August 31, 2011, S███ filed a *pro se* Petition to Establish Custodial Responsibility, Financial Statement and proposed Parenting Plan[6] in Wood County, West Virginia.

   b. On September 27, 2011, W█████ filed an Answer and Counter-Petition, as well as a Notice of Preliminary Relief that proposed that the Court adopt a "phase in" parenting plan to enable the minor child to develop a bond with ███.

   c. On December 28, 2011, S███ requested a continuance of the hearing scheduled for January 10, 2012 but did not cite any reasons in his request. This request was denied by the Wood County Family Court.

---

[5] A pending family court action in another jurisdiction or venue does not preclude a finding of abandonment. See, e.g., *In re Carey L.B.*, 227 W. Va. 267, 272, 708 S.E.2d 461, 466 (2009), In re Jeffries, 204 W. Va. 360, 512 S.E.2d 873 (1998).

[6] The Financial Statement filed by S███ did not contain any information concerning his income or work history. It is further noted that the Parenting Plan S███ filed did not request any parenting time with the minor child.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

9

d. At the Preliminary Hearing held on January 10, 2012, S█ did not appear. The Family Court entered an Order establishing paternity and child support. The Family Court established a child support obligation and attributed S█ minimum wage income, resulting in a child support obligation of $165.00 per month. A Judgment for accrued child support in the amount of $3,300 was entered. *See Wood County Preliminary Order*, entered January 18, 2012. Based upon the testimony of Ms. W█ and Mr. Myers at the instant hearing, the Court finds that Ms. W█ was prepared to offer S█ a temporary "phase in" parenting plan at the Temporary Hearing on January 10, 2012.

e. On February 2, 2012, S█ filed a *pro se* Answer to Wilkins' Counter-Petition.

f. On April 26, 2012, Attorney David Karr filed a Notice of Appearance on behalf of Mr. S█ and a Motion to Recuse Judge Dempster, on the basis that Judge Dempster was biased or prejudiced against S█, due to various perceptions S█ had formed based on Judge Dempster's denial of S█'s prior Motion to Continue. *See Motion to Recuse Family Court Judge*, filed April 27, 2012. Counsel for Ms. W█ filed a Response contending that the Motion to Recuse was without merit. *See Respondent's Reply to Petitioner's Motion to Recuse Family Court Judge*, filed May 7, 2012. Judge Dempster denied the Motion to Recuse by letter dated August 6, 2012, addressed to Chief Justice Menis Ketchum, explaining that Mr. S█ asserted no valid facts in support of his Motion. A copy of this letter was filed in with the Wood County Clerk on August 7, 2012.

g. It is further noted that S█ filed a complaint with the Judicial Ethics Commission against Judge Dempster. On or about June 15, 2012, S█'s Complaint against Judge Dempster was dismissed by the Judicial Investigation Commission.

h. During the time period of April 26, 2011 to August 24, 2011, David Karr, Jr., S█'s attorney, made various written requests to Myers, W█ attorney, for informal, ad hoc visits. These requests by Karr did not propose specific dates and times for visits and provided little notice to W█. Because S█'s wife was unaware of S█████, he was not able to plan visits to West Virginia in advance.

i. The only relevant requests within the six (6) month window for abandonment were letters dated July 16 and August 24.[7] However, these requests by Karr

---

[7] These informal, ad hoc requests that did not propose specific dates/times for visits and provided little notice to W█ to accommodate visits are somewhat analogous to the scenario presented in *Kayla F. v. Leonard F.*, 12-1465, 2013 WL 3929080 (W. Va. July 30, 2013) (memorandum opinion). In *Kayla F.*, the Circuit Court granted the Petition for Adoption alleging abandonment and the Mother appealed. The subject child lived with the Respondents since April 16, 2010. During this time, the Mother visited with the child in the respondents' home three times: June of 2010; September of 2010; and May 26, 2011. The Petition for Adoption was filed on July 16, 2011. The Circuit Court found that the Mother had no contact

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

10

did not propose specific places, dates and times for visits and provided little notice to W████, who worked full time as an attorney in Nicholas County.

j.  W████ was not opposed to S██ having visitation with S██████. She only wanted the visits to be regular and not sporadic. She strongly believed that consistent visitation was in the best interest of S██████.

k.  On June 19, 2012, S██ provided a child support payment for his arrearage of $3,300 as of January 2012 and brought his child support obligation current through the month of June 2012 with a separate $900 payment.

l.  The Wood County Family Court scheduled a hearing for November 19, 2012. At this hearing, an agreed upon "phase in" parenting plan was Ordered by the Court. See *Modified Preliminary Order* entered December 3, 2012.

m.  Under the agreed upon "phase in" parenting plan, Phase I visits were Ordered to occur on:[8]

    a.    November 29, 2012
    b.    December 4, 2012
    c.    December 13, 2012
    d.    December 20, 2012
    e.    December 27, 2012.

n.  S██ did not exercise any of the five (5) visits he was awarded and failed to contact W████ to offer any explanation.

o.  S██ testified that he was unable to exercise the visits due to a back injury he sustained following the hearing.

p.  At a hearing on April 12, 2013, Judge Dempster found that:

> [W████] *communicated to [S██] by email (copies of which were admitted into evidence as Respondent's Exhibit 1) regarding the scheduled visits for December 4, December 13 and December 20, 2012, respectively. [S██] acknowledged receipt of the emails but admitted he did not respond.*
>
> *Although [S██] may have had a valid excuse or reason not to exercise his first two [2] visits by reason of his medical condition, the Court can find no*

---

with the child for an eight month period prior to the filing of the petition, provided no voluntary financial support, and only visited with the child briefly upon the advice of counsel. The Supreme Court of Appeals affirmed. In this case, it is difficult to conclude that such requests were genuine. The 11th hour nature of these requests makes them unreasonable, due to a lack of specificity.

[8]  The way the agreed upon "phase in" parenting plan was set up, unless Phase I was completed, the parties would not proceed to Phase II.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

11

*viable reason or basis for [S███] to not have followed through with subsequent visits as authorized in the Modified Preliminary Order.*

*The Court finds that with respect to said visits, [W████] attempted to communicate with [S██] but [S██] chose not to communicate in response in any manner.*

See *Order,* entered May 20, 2013.

q. The Wood County Family Court entered an Order staying further proceedings pending the adjudication of the instant Adoption Petition. See *Order,* entered May 20, 2013.

## Conclusions of Law

29. It is undisputed that at the time of the filing of the Petition for Adoption on January 7, 2013, S███ had failed to make any court ordered support payments for six (6) months- from July-December of 2012.

30. In *Joshua D.R. v. David A.M.,* 746 S.E.2d 536 (W. Va. 2013), the Supreme Court of Appeals found that Father's post-filing payments of support were not relevant and that "the relevant inquiry as established by the Legislature, which is whether the respondent provided financial support **during the six months immediately preceding the filing of the petition for adoption.**" *Id.* at 543 (emphasis added).

31. Moreover, the Court received evidence showing that S███ had received a back award of Supplemental Security Income (SSI) in July of 2012 of nearly ten thousand dollars. The Court further heard evidence that S███s wife was employed during all relevant time periods[9].

---

[9] The West Virginia Supreme Court of Appeals has previously considered whether a spouse has supported an individual as a relevant factor in making the determination of whether a biological father failed to support his child within his means and abilities. See *In re Carey L.B.,* 227 W. Va. 267, 274-75, 708 S.E.2d 461, 468-69 (2009) ("Specifically, the record indicates that during the same period in excess of six months prior to the petition for adoption being filed in which no child support was paid and an

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
.UMMERSVILLE, WV 26651

12

32. Based on the foregoing, the Court concludes as a matter of law that S█ failed to financially support S██████ within his means and ability.

33. However, to invoke the statutory presumption of abandonment under West Virginia Code § 48-22-306(a)(2), the Petitioners must also show that S█ failed to visit or otherwise communicate with the child when:

   a. he knows where the child resides;

   b. he is physically and financially able to do so;

   c. he is not prevented from doing so by the person or authorized agency having the care or custody of the child; and

   d. that such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

34. The Court concludes as a matter of law that S███ was aware of where the child resided, as evidenced by his ability to serve W████ with a Petition for Allocation of Custody in September of 2011. S█ had access to the Court file and W████' lawyer's contact information from September of 2011 until the time of filing the Adoption Petition on January 7, 2013. Also, W████, an attorney, was listed in the State Bar Directory during all relevant times and her email address did not change.

35. Based on the evidence presented, the Court further concludes as a matter of law that S█ was physically and financially able to visit and/or communicate with S██████. While S██'s medical condition may not have permitted him to visit at

---

arrearage in support accumulated in excess of $19,000.00, the biological father incurred and serviced an obligation to purchase a car, got married and was supported by his spouse, arranged for family members to pay for his medical expenses and was able to come up with the $10,000 required for drug rehabilitation treatment. All of this occurred while the children were not being financially supported by their biological father.").

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

13

certain times, at the very least he was able to engage in some *de minimis* form of communication with S███████, by sending her gifts, cards, etc. However, S███ never sent S██████ a gift, birthday card, Christmas present, etc. S██████ was nearly three (3) years old at the time the Petition for Adoption was filed. S███ acknowledges that he did not do so and admittedly regrets that he chose not to do so.

36. Based on the evidence presented, the Court further concludes as a matter of law that W████ did not "prevent" S███ from communicating with or having visits with S██████. The only thing that truly "prevented" S███ from visiting his child was the fact that he did not tell his wife about S██████'s existence. S██████ was almost three (3) years of age at the time the Adoption Petition was filed. S██'s decision to keep his child a secret from his wife was the only thing that "prevented" him from seeing S██████ on a regular basis.

37. The evidence shows that W████ tried to involve S███ in S██████'s life after she was born. W████ even offered to travel to Florida with the child to visit him. W████ only insistence was that S██'s visitation with S██████ be regular, structured and not sporadic. Thus, when W████ declined to engage in informal, ad hoc visits at the request of S██'s lawyer whenever S██ could sneak away from his wife who did not know about S██████, W████ was not "preventing" S███ from visits- she was protecting her child's best interests. As observed by the West Virginia Supreme Court in *Kayla F. v. Leonard F.*, 12-1465, 2013 WL 3929080 (W. Va. July 30, 2013) (memorandum opinion), "[i]nconsistent contact, punctuated by long periods of no contact, would only act to disappoint and harm the child as [she] grows older."

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

14

38. The evidence shows that W█████ was prepared to offer a "phase in" parenting plan as early as January of 2012; however, S███ did not attend the hearing and filed a meritless Motion to Recuse the Family Court Judge that resulted in a substantial delay. When W████ and S███ agreed on a "phase in" parenting plan in November of 2012, it was S███ that did not exercise any of the five visits he was awarded. W████ even emailed S███ on three occasions to help facilitate the visits and received no response. S███'s insistence that his visitation efforts were hindered by W████ are not well taken and are inconsistent with the uncontroverted evidence that he voluntarily chose not to exercise visitation he was previously awarded by the Family Court of Wood County. See *Joshua D.R. v. David A.M.*, 746 S.E.2d 536 (W. Va. 2013)

39. The Court further concludes as a matter of law that S███'s failure to act as set forth hereinabove continued uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

40. The Court further concludes as a matter of law that S███ has failed to demonstrate circumstances compelling enough to rebut the presumption of abandonment under the facts of this case. Again, the only thing that truly prevented S███ from visiting his child was the fact that he did not tell his wife about S██████'s existence.

41. The Court further concludes as a matter of law that S███'s conduct also satisfies West Virginia Code § 48-22-102, which defines abandonment as "conduct by the birth mother, legal father, determined father, outsider father, unknown father or putative father that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child." The fact that S███ did not tell his

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

15

wife about S███████ in nearly three (3) years is competent evidence that demonstrates a settled purpose that S██ intended to forego all duties and relinquish all parental claims to the child. A secret, clandestine relationship with a child where the child will never know the Father's family is contrary to a child's best interests.[10]

42. The evidence also supports the conclusion that adoption is in S██████'s best interests as she has bonded with B█████ and B████ has fulfilled her emotional and financial needs since she was an infant. See *In re Adoption of D.T.*, 12-1512, 2013 WL 5476400 (W. Va. Oct. 1, 2013).

43. Based on the foregoing findings and conclusions, the Court **GRANTS** the Petitioner's Petition for Adoption on the grounds of abandonment, pursuant to West Virginia Code § 48-22-306. The Court will immediately enter a separate Decree of Adoption.

**PARTIES - PLEASE TAKE NOTICE**

(1)     This is a final order;

(2)     Any party aggrieved by a final order may take an appeal to the Circuit Court or directly to the West Virginia Supreme Court of Appeals;

(3)     A petition for appeal to the Circuit Court may be filed by either party within (30) days after entry of the final order;

(4)     In order to appeal directly to the West Virginia Supreme Court of Appeals both parties must file, within fourteen (14) days after entry of the final order, a joint notice of intent to appeal and waiver of right to appeal to Circuit Court.

---

[10] It is noted that over six (6) months subsequent to the filing of the Adoption Petition, S██ told his wife about S███████. However, this fact is not relevant as it occurred after the time of filing and only after Petitioners' counsel attempted to subpoena S██'s wife.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

16

The Clerk of this Court is hereby **ORDERED** to mail a certified copy of this Order to the parties at the following addresses:



C███ and N███ B███
c/o W. Brad Dorsey, Esq.
Callaghan & Callaghan, PLLC
600 Main Street
Summersville, WV 26651

D███ S███
c/o David R. Karr, Jr.
P.O. Box 1283
Charleston, WV 25325-1283

To all of which the Petitioners and the Respondent **OBJECT** and **EXCEPT** as her or his interests may appear adversely affected hereby.

And further the Court sayeth naught.

ENTERED this the ___21st___ day of ___August___, 2014.

_____
Honorable J. Lewis Marks, Jr., Special Judge

**Prepared by:**

_____
W. BRAD DORSEY (WV Bar #9650)
CALLAGHAN & CALLAGHAN, PLLC
600 Main Street
Summersville, West Virginia 26651
(304) 872-6050

IN THE CIRCUIT COURT OF NICHOLAS COUNTY, WEST VIRGINIA

NICHOLAS COUNTY, WV

IN RE:     PETITION FOR ADOPTION OF A MINOR CHILD,
NAMELY, S████████ A████████ W████████

ADOPTION NO.: 13-A-5

## FINAL ORDER OF ADOPTION

This matter came on for hearing before the Honorable J. Lewis Marks, sitting by special assignment, on the 7th day of March, 2014, pursuant to a Petition for Adoption having been filed by the Petitioners herein, C███ █ B███ and N█ ████ W███-B███. The Petitioners were present in person and by Counsel, W. Brad Dorsey, Callaghan & Callaghan, PLLC. Other persons entitled to Notice of these proceedings, namely, D███ █ S██, appeared in person and by Counsel, David R. Karr, Jr.

Thereupon, the Court proceeded to a full hearing on the Petition for Adoption and the examination of C███ █ B███ and N█ W███ B███, under oath, as well as hearing all other competent evidence introduced regarding the minor child sought to be adopted and the character and financial standing of the Petitioners.

Based on the testimony of the parties and the review of the record, the Court does accordingly **FIND** and **ORDER** as follows:

1.    That the Petitioners are C███ █ B███ and N██ ████ W███-B███, who reside at 104 Center Street, Summersville, Nicholas County, West Virginia.

2.    That the child, who is the subject of this adoption, S████ A████ W███, is three (3) years of age.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

3. That S███████ A███████ W████ was born on April 30, 2010, at Ruby Memorial Hospital in Monongalia County, West Virginia.

4. That the mailing address of the Petitioners is 104 Center Street, Summersville, Nicholas County, West Virginia, 26651.

5. C█████ B██████ is forty (40) years of age and was born on May 17, 1973. N███████ W████-B████ is forty-one (41) years of age and was born on September 22, 1972. Her maiden name is N██████ W████.

6. That both Petitioners are at least fifteen (15) years older than the minor child they request to adopt.

7. That the biological father of the child is David ████ S██.

8. That the biological mother of the child is Nancy Christine Wilkins B████ and Co-Petitioner herein.

9. That the biological mother has executed a consent for her husband, C████ B████, to adopt her biological child, S██████ A████ W████, which is attached to the Petition for Adoption as "Exhibit A".

10. That the consent form complies with all statutory requirements, and further, that the consent was voluntary and not obtained as a result of any fraud, duress, misrepresentation or other unconscionable conduct.

11. That since the child was born, N███ █████ W███-B████ has maintained and supported the minor child and has provided all of the costs necessary for the health, welfare, safety and education of the minor child. Since February of 2012, C████ B████ has likewise made contributions to the health, welfare, safety and education of the minor child.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

29

12. That the Petitioners have had custody of the minor child for more than six (6) months prior to the date of the filing of the Petition.

13. That both Petitioners are actual bona fide residents of Nicholas County, West Virginia.

14. That both Petitioners are citizens of respectable standing in their community and are of good moral character.

15. That both Petitioners have the physical, emotional and financial ability to maintain and educate S███████ A███████ W████, and that they will make satisfactory custodians for the child.

16. That the child is not "Indian children" as defined in the Indian Child Welfare Act 25 U.S.C. §1903 et seq.

17. On January 7, 2013, the Petitioners filed a Petition for Adoption alleging that D███ ███ S██ abandoned S███████ A███████ W████ pursuant to West Virginia Code § 48-22-306(a).

18. On March 7, 2014, a full hearing was held on the Petition for Adoption, which alleges that the subject child's biological father, D███ ███ S██, abandoned the infant, pursuant to *West Virginia Code* § 48-22-306. By separate Order entered simultaneously herewith, this Court has determined as a matter of law that D███ ███ S██ has abandoned S███████ A███████ W████ and that the adoption by Petitioners is in the best interest of the minor child.

19. Although D███ ███ S██ will be adversely affected by the granting of the Petition, he has waived his right to object due to his abandonment of the infant. No other person will be adversely affected by the granting of the Petitioners' Petition for Adoption.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

30

20.    All the RIGHTS, DUTIES, PRIVILEGES and RESPONSIBILITIES of the biological father, D█████ P███ S███, to the infant, S█████████ A███████ W█████ will be forever TERMINATED.

It is therefore **ORDERED, ADJUDGED** and **DECREED** that C████████ B█████ be permitted to adopt the said minor child, and said adoption is approved and confirmed by the Court.

It is further **ORDERED, ADJUDGED** and **DECREED** that from the date of the entry of this Order of Adoption all of the rights, duties, privileges and relations between the said child and his parent by adoption, henceforth shall be and they are hereby declared in all respects to be the same, including the right of inheritance as if the said child had been born to C██████ █ B█████ and N█████████ W████-B█████, as provided by law.

It is further **ORDERED, ADJUDGED** and **DECREED** that immediately upon the entry of this Order of Adoption the Clerk of this Court shall forthwith make and deliver to the State Registrar of Vital Statistics a Certificate under the seal of this Court showing the information required by the provisions of Chapter 48, Article 22, Section 702 of the Code of West Virginia of 1931, as amended.

It is further **ADJUDGED, ORDERED AND DECREED**, that the name of said child be changed to S█████████ A███████ B██████.

All of which is **ORDERED, ADJUDGED** and **DECREED** accordingly.

CALLAGHAN &
CALLAGHAN, PLLC
ATTORNEYS AT LAW
600 MAIN STREET
SUMMERSVILLE, WV 26651

31

13-A-5-

ENTERED this the ___31st___ day of _August_, 2014,

_____
JUDGE J. LEWIS MARKS

Prepared by:

_____
W. Brad Dorsey (WV Bar No.: 9650)
Callaghan & Callaghan, PLLC
600 Main Street
Summersville, WV 26651
(304) 872-6050