# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0458** (McDowell County 17-AP-7-S)

**Michael Armstrong,**
**Defendant Below, Petitioner**

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Armstrong, by counsel John H. Bryan, appeals the Circuit Court of McDowell County's March 23, 2018, order denying his appeal of his conviction of obstructing an officer. The State, by counsel Holly M. Flanigan, filed a response and a supplemental appendix. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in convicting him of obstruction using a lesser standard of proof than "beyond a reasonable doubt." Petitioner also contends that he was not provided a copy of the body camera footage and one of the officers involved in his arrest was on administrative leave during trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 22, 2016, four police officers were dispatched to a home petitioner shared with his aunt in response to a domestic violence-related 9-1-1 call. During the officers' inquiry, petitioner refused their attempt to perform a *Terry*[1] frisk, and he was ultimately arrested for obstructing an officer. Petitioner was tried and convicted in magistrate court of obstructing an officer in violation of West Virginia Code § 61-5-17(a). At sentencing, the magistrate court imposed associated court costs and sentenced petitioner to time served. He appealed his conviction to circuit court and the circuit court held a bench trial on May 15, 2017. The State presented the testimony of Welch City Police Department Patrolman Patrick McKinney and West Virginia State Troopers C.A. Dunn, Ralph Justus, and Eric W. Boothe. The State also presented the audio

---

[1]*See Terry v. Ohio*, 392 U.S. 1 (1968).

1

recording of petitioner's statement to Trooper Boothe and a DVD containing the footage from Patrolman McKinney's body camera from the night of the arrest.

First, Trooper Dunn testified that he and the three other officers received the call regarding a domestic violence dispute at petitioner's residence and all four officers went to the home. Trooper Dunn explained that, as they approached the home, they could hear "yelling" and "really loud talking in an aggressive manner." According to Trooper Dunn, petitioner continued to speak in a hostile and aggressive manner, even after Trooper Justus told him several times to "relax, calm down." Trooper Dunn described the scene as "kind of a tense situation. [Petitioner] had been yelling at the female, the older female that was in the residence." Trooper Dunn believed a *Terry* frisk was important "[f]or everyone's safety, due to the demeanor and the—aggressive talking and yelling . . . anytime we're on a call like that . . . officers will complete that *Terry* frisk just for officer safety to make sure there's no weapons, sharp objects," or other items that may endanger persons present. Trooper Dunn observed Trooper Justus inform petitioner that he was going to conduct a *Terry* frisk, which he then attempted. However, when Trooper Justus attempted to gain control of petitioner's hands, petitioner tensed up and jerked his hands away. According to Trooper Dunn, Trooper Justus could not get petitioner's hands under control and "took him to the floor," while continuing to instruct him to stop resisting. Then, because petitioner continued to resist, it was necessary for Trooper Boothe to assist Trooper Justus. The officers were eventually able to handcuff petitioner.

Trooper Boothe corroborated Trooper Dunn's testimony and stated that, following the arrest, the officers took petitioner to the Welch detachment of the State Police for processing. There, Trooper Boothe informed petitioner of his *Miranda*[2] rights and took the following recorded statement:

> Trooper Boothe: This is Trooper E.W. Boothe, [West Virginia] State Police, Welch Detachment. Today's date is 11-22-2016. Time now is 23:14. Here present at the Welch Detachment . . . state your name.
>
> Petitioner: Michael Anthony Armstrong.
>
> Trooper Boothe: Alright Mr. Armstrong, I've uh read you your *Miranda* rights from a copy of your card, that's correct?
>
> Petitioner: Yes, sir.
>
> . . . .
>
> Trooper Boothe: So what, uh, [why] did we come in contact with you tonight?
>
> Petitioner: My [aunt] called because we were in an argument and she wished to have me evicted from the home.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

. . . .

Trooper Boothe: Okay. Um. Once myself and the other troopers, me and . . . Trooper Justus, . . . Trooper Dunn, and Welch Police Officer Pat McKinney arrived at your house . . . Trooper Justus, uh asked you to stand up and speak to you, pat you down, just for officer safety concern, is that correct?

Petitioner: Yes, sir.

Trooper Boothe: Okay, um while he was doing so, uh you were tensing your arms. Is that correct?

Petitioner: Yes, sir.

Trooper Boothe: And he asked you not to?

Petitioner: Yes, sir.

Trooper Boothe: Okay, but you continued to do so?

Petitioner: Yes, sir.

Trooper Boothe: Okay, . . . why did you continue to do that?

Petitioner: Aggravation, sir.

Trooper Boothe: Okay.

Petitioner: Aggravated, poor judgment.

Trooper Boothe: Okay, um, after . . . [he] asked you multiple times to calm down, quit tensing your arms . . . you refused to do so, you were placed on the ground and hand cuffed, that's correct?

Petitioner: Yes, sir.

. . . .

Trooper Boothe: Is everything in this statement true?

Petitioner: Yes, sir.

Next, Patrolman McKinney corroborated the other officers' testimony and also stated that he turned on his body camera before he entered the home. He testified that he overheard Trooper Justus ask petitioner what his alternatives for housing were that night and petitioner replied, "jail." Patrolman McKinney explained that when petitioner was taken down to the floor by Trooper

Justus, Patrolman McKinney was speaking to petitioner's aunt and his back was toward petitioner and Trooper Justus. Patrolman McKinney then also had to assist the other officers while petitioner was resisting the *Terry* frisk. He assisted by holding petitioner's legs "to keep him from kicking up." According to Patrolman McKinney, petitioner "was giving pretty strong resistance. And I kept [telling him to] 'quit.' And we finally got him cuffed and the troopers removed him from the residence."

During Patrolman McKinney's testimony, the State laid the foundation for the body camera footage, including testimony that the video could not be altered in any fashion. Petitioner cross-examined Patrolman McKinney prior to the footage being played. The State then introduced the footage into evidence and played it for the circuit court without any objection. At the conclusion of the footage, the State moved for its admission into evidence. The court expressly asked petitioner if he objected to the admission of the footage, and he did not.

The State's last witness, Trooper Justus, then testified and corroborated the testimony of the other officers. He testified that, during his attempt to frisk petitioner, he feared petitioner intended to grab a weapon or become combative. He stated that he gave petitioner "numerous orders to stop tensing up. He continued to pull away from me. At that point, I did assist him to the ground to limit his aggressive movements, to prevent—any further incidents with him." Further, according to Trooper Justus, once petitioner was placed on the ground, "he began thrashing around very aggressively, and he was actually pushing me off of him, and he's such a large man and so strong, he actually pulled me off of him at one time. He lifted me off the ground." Trooper Justice explained that he then received assistance from the other officers, but petitioner continued to resist and refused to follow the officers' orders.

Lastly, petitioner testified on his own behalf as the defense's only witness. He testified that when Trooper Justus attempted to frisk him, the trooper told him three times to stop tensing up, but petitioner did not know what Trooper Justus was talking about. Although he testified that he tried to be fully cooperative with the officers, he stated that on the night of his arrest, he was frustrated about the argument he had with his aunt and was also upset with her for calling the police. Petitioner stated that police had been called to his house "in excess of five times" before the November 22, 2016, incident due to arguments between him and his aunt. He admitted that he said something to the officers such as "I guess I need to go to jail" or "[t]ake me to jail" because he was "so frustrated." Petitioner denied obstructing, claimed that the body camera footage had been tampered with, claimed that his statement to Trooper Boothe was false, and claimed that he was scared of the police.

At the conclusion of the trial, prior to announcing its finding that petitioner was guilty of obstruction, the circuit court noted on the record that "I know your client disagrees that maybe everything wasn't covered on that tape, but—but from what I saw on it that was produced here today and—shown today, indicates that there is a likelihood that he was obstructing." In its May 16, 2017, order, the circuit court adjudged petitioner guilty of obstruction and affirmed the magistrate court's decision. It is from this order that petitioner appeals.

We have previously held as follows:

"In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl. Pt. 2, *State v. Bruffey*, 207 W. Va. 267, 531 S.E.2d 332 (2000). Upon our review, we find no error in the circuit court affirming petitioner's conviction.

First, petitioner argues that the circuit court erred in finding him guilty of obstruction using a lesser standard of proof than "beyond a reasonable doubt." In support, petitioner contends that his guilty verdict was based upon the court's statement on the record that the body camera footage indicated that there was a "likelihood that [petitioner] was obstructing." Petitioner contends that a "likelihood" that he committed the crime does not rise to the level of a finding of guilt beyond a reasonable doubt. However, petitioner cites to only a small portion of the record in support of his argument. In its order affirming the magistrate court's decision, the circuit court found petitioner "guilty of obstruction." Although petitioner does not challenge the sufficiency of the evidence, we find that there was ample evidence admitted to prove beyond a reasonable doubt that petitioner was guilty of obstruction. This Court has held as follows:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact *could have found* the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (emphasis added). In regard to the misdemeanor crime of obstruction, West Virginia Code § 61-5-17(a) provides that: "[a] person who by threats, menaces, acts, or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer . . . acting in his or her official capacity is guilty of a misdemeanor." This Court examined the statutory terms "forcibly or illegally" and stated that such terms "used in the statute clearly mean any unlawful interference with the officer in the discharge of his official duties, whether or not force be actually present." *State v. Johnson*, 134 W. Va. 357, 360, 59 S.E.2d 485, 487 (1950). Further, the Court explained that the key to the obstruction offense was the "direct interference with the officer in the discharge of his official duties." *Id.*

Here, there was sufficient evidence admitted during the circuit court bench trial to prove beyond a reasonable doubt that petitioner was obstructing. While the footage from the body camera does not concretely establish that petitioner obstructed the officers due to the camera's angle, the testimony from the four law-enforcement officers established that petitioner repeatedly resisted the frisk and failed to comply with orders from the officers. Trooper Dunn testified that a *Terry* frisk was routine on domestic violence-related calls and necessary for the officers' protection due to petitioner's behavior. The officers all testified that when Trooper Justus informed petitioner that

he was going to frisk him for weapons, petitioner "tensed up" and resisted the frisk. Trooper Justus testified that during his attempt to frisk petitioner, he feared petitioner intended to grab a weapon or become combative. The officers testified that petitioner resisted Trooper Justus to the point that the other officers had to assist him and force petitioner to the floor. Testimony was presented that petitioner was "kicking up" and "giving pretty strong resistance" despite the officers' orders for petitioner to stop resisting. The officers testified, and petitioner admitted during the trial, that petitioner stated that his alternative for housing that night was to go to jail. Further, petitioner gave a statement at the police station and admitted to "tensing his arms" and resisting the *Terry* frisk because he was "aggravat[ed]." Based on this evidence, it is clear that the State proved, beyond a reasonable doubt, that petitioner obstructed the officers from acting in their official capacity when he resisted a *Terry* frisk that Trooper Justus attempted to perform to ensure the safety of the persons present.

Next, petitioner argues that the circuit court erred in finding him guilty of obstruction when he was "not provided with a copy of body-cam footage until the day of trial, and [because] the primary police officer involved was on administrative leave, and now terminated from the West Virginia State Police, and is now under criminal investigation." These arguments were not raised below and, therefore, will not be considered on appeal. In fact, during the bench trial when the State moved to admit the body camera footage into evidence, the circuit court specifically asked petitioner if he had any objections, and he did not. "'This Court will not consider questions, nonjurisdictional in their nature, not acted upon by the circuit court as an intermediate appellate court.' Syllabus point 1, *Pettry v. Chesapeake & Ohio Railway Company,* 148 W.Va. 443, 135 S.E.2d 729 (1964)." Syl. Pt. 2, *Haines v. Kimble,* 221 W. Va. 266, 654 S.E.2d 588 (2007). Petitioner also cites to several newspaper articles in support of his argument regarding one of the police officers now under criminal investigation who testified in the matter. These articles will not be considered on appeal. This Court has stated that "our review is limited to the record as it stood before the circuit court at the time of its ruling." *Powderidge Unit Owners Ass'n v. Highland Props.*, 196 W. Va. 692, 700, 474 S.E.2d 872, 880 (1996). As such, petitioner is entitled to no relief.

For the foregoing reasons, the circuit court's March 23, 2018, order denying petitioner's appeal is hereby affirmed.

Affirmed.

**ISSUED**: September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison